GEORGIA SHEPARD v. DRUCKER & FALK, A PARTNERSHIP; FAIRWAY CO., A
LIMITED PARTNERSHIP; DAVID FALK, INDIVIDUALLY AND AS A GENERAL PARTNER
IN FAIRWAY CO., A LIMITED PARTNERSHIP, AND AS A PARTNER IN DRUCKER & FALK,
A PARTNERSHIP; BERNARD KAYDEN, INDIVIDUALLY AND AS A GENERAL PART-
NER IN FAIRWAY CO., A LIMITED PARTNERSHIP; E. E. FALK AND ERWIN B.
DRUCKER, INDIVIDUALLY AND AS PARTNERS IN DRUCKER & FALK, A PARTNERSHIP

No. 8210SC992

(Filed 6 September 1983)

1. **Evidence § 19.2— assault in parking lot—evidence of prior crimes properly ex-
cluded**

   In an action by a tenant of an apartment complex owned and operated by
   defendants to recover for personal injuries suffered when she was sexually
   assaulted at gunpoint, the trial court properly excluded evidence of prior
   crimes committed at the apartment complex since in the other crimes the
   criminals used a passkey to break into apartments which had nothing to do
   with the way plaintiff was attacked in a parking lot.

2. **Evidence § 48.1— failure to qualify as expert—exclusion of testimony proper**

   The trial court properly prohibited a witness from testifying about the
   relationship between crimes against property and violent crime since the
   witness was never qualified as an expert by the trial judge.

3. **Evidence § 19.1— assault in parking lot—evidence of lighting at other times
   properly admitted**

   In an action by a tenant of an apartment complex owned and operated by
   defendants to recover for personal injuries suffered when she was sexually
   assaulted at gunpoint, the trial court did not err in admitting evidence about
   the lighting at the apartment complex at times other than when she was at-
   tacked and to compare the apartment lighting with that of other complexes.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 23
December 1981 in Superior Court, WAKE County. Heard in the
Court of Appeals 25 August 1983.

This is an action by a tenant in an apartment complex owned
and operated by the defendants to recover for personal injuries
suffered when she was sexually assaulted at gunpoint. The as-
saults occurred in the parking lot and her apartment at Fairway
Apartments in Raleigh.

The complaint alleged that the defendants were negligent in failing to warn the plaintiff of dangerous conditions in the parking lot, in failing to light it adequately, and in failing to provide adequate security.

The plaintiff testified that she returned home from work about 1:45 a.m. on 5 May 1979. After she got out of her car, a man with a gun grabbed her. He raped her first in her car and then in her apartment. The man was convicted in a criminal action of first-degree rape, kidnapping, and crime against nature.

Five employees of the Wake County Sheriff's Department testified for the plaintiff. They described the crimes that they had investigated which occurred at Fairway Apartments. The crimes included larceny, breaking and entering, and sex offenses. When they investigated crimes at Fairway, they would notify the management that they were on the premises and the type of crime that had occurred.

A number of witnesses described the lighting at the complex as inadequate, with a former employee at the complex testifying that she received a number of complaints from tenants about the lighting.

The plaintiff's final witness was Dr. William Bopp, who testified as an expert in the fields of crime prevention and security criminology. He stated that adequate lighting has a dampening effect on intruder-related crime and that if the only lighting at the complex illuminating the parking lot were lights on the ends of the buildings, additional lighting would have been necessary to provide minimum security for tenants.

Some former managers of Fairway Apartments testified for the defendants. They said that they remembered some property crimes, but no assaults.

A number of the defense witnesses testified that lighting at the complex was adequate and compared favorably with other complexes. Three witnesses said that it was not the custom in Raleigh and North Carolina apartment complexes to hire security guards.

Bruce Marshburn, Deputy Director of the Governor's Crime Commission, testified that there was *no correlation between*

crimes which might be displaced by lighting, like vandalism of cars, and rape. In his opinion, the rape in this case was not predictable.

The jury decided that the plaintiff was not injured as a result of the defendant's negligence. From that decision, the plaintiff appealed.

*Thorp & Slifkin, by William L. Thorp and Anne R. Slifkin, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay and Sanford W. Thompson, IV, for defendant-appellee.*

ARNOLD, Judge.

A landlord is under a duty to its tenant to inspect and repair the common areas of the premises. W. Prosser, Handbook of the Law of Torts § 63 (4th ed. 1971). A tenant is normally seen as an invitee and the liability of a landlord for physical harm to its tenant depends on if it knows of the danger. *See* Restatement (Second) of Torts § 344 (1965), especially comment f:

> f. *Duty to police premises.* [The possessor of land] is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. . . . If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it. . . .

As was stated in *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 640, 281 S.E. 2d 36, 39 (1981): "[U]nder both the Restatement . . . and the prior decisions of this Court, foreseeability is the test in determining the extent of a landowner's duty to safeguard his business invitees from the criminal acts of third persons." *Foster* held that a shopping center has a duty to protect its business invitees from the criminal acts of third persons on its premises, specifically, in its parking lot. *See also, Urbano v. Days Inn*, 58 N.C. App. 795, 295 S.E. 2d 240 (1982) (extended the *Foster* rule to a motel parking lot).

Both *Foster* and *Urbano* reversed summary judgment for a defendant and held that the negligence issue was for the jury. The plaintiff in each case introduced evidence of prior third-party crimes that were recent in time.

In *Foster*, there were thirty-six criminal incidents, including four or five assaults, at the shopping center within a one-year period immediately preceding the plaintiff's assault. In *Urbano*, the defendant knew of forty-two criminal incidents on the motel premises within the three years before the plaintiff's injury, with twelve of them within three and one-half months before the injury. None of the incidents in *Urbano* involved an assault on a guest, but there was one armed robbery and seven illegal entries into motel rooms.

The parties here agree with the duty as stated above. They do not agree, however, on a number of the trial judge's rulings on whether testimony and evidence were admissible and on his instructions to the jury.

[1] The plaintiff first contends that the trial judge should not have excluded evidence of prior crimes that she attempted to offer. The four incidents that she raises on appeal were irrelevant and properly excluded.

Evidence about crimes committed at Fairway Apartments when the criminals used a passkey to break into apartments had nothing to do with this attack in the parking lot. Even if it did show that crimes occurred at Fairway, evidence about the passkeys and that the defendants knew that there was a security problem was admitted on a number of occasions, making this one denial harmless error. *U.S. Indus., Inc. v. Tharpe*, 47 N.C. App. 754, 764, 268 S.E. 2d 824, 830, *rev. denied*, 301 N.C. 90, 273 S.E. 2d 311 (1980).

A rape which occurred at Montecito, another complex managed by the defendants, was also irrelevant. It involved the use of a passkey and had nothing to do with the rape in this case. The defendants had sufficient notice that crimes occurred at Fairway without evidence of the Montecito attack.

[2] It was also not error to prohibit Lieutenant Benson from testifying about the relationship between crimes against property and violent crimes. The record shows that Benson was never

qualified as an expert by the trial judge. Absent such a ruling, we will not review exclusion of his testimony on appeal. *State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980). 1 Brandis, N.C. Evidence § 133 (2d rev. ed. 1982). In any case, similar evidence came in through the testimony of other witnesses.

Finally, the alleged rape that occurred in March 1976 in an apartment at Fairway was not probative here because of fact differences. It occurred inside an apartment after someone using a passkey broke in. No one was ever caught or prosecuted for it. In any case, other witnesses referred to it in their testimony.

[3] The plaintiff next argues that it was error to admit evidence about the lighting at Fairway at times other than when she was attacked and to compare the Fairway lighting to that at other complexes. We disagree.

The best method to prove lighting conditions at the time of a crime is to present evidence about lighting at that time. Although much of the defendants' evidence about lighting was at times other than the attack on the plaintiff, this is not reversible error.

The defendants were responding to the plaintiff's witness Dr. Bopp. His testimony about lighting at Fairway was based on observations made over two years after the attack on the plaintiff.

With Bopp's testimony in evidence, it was not error to allow the defendants' witnesses to testify about lighting at times other than when the plaintiff was raped. We note that the defendants' witness Marshburn did not take light readings at Fairway until he "recreate[d] the scene the way it was without those pole lamps [which were added after the attack on the plaintiff]."

It was not error to allow testimony comparing lighting at Fairway with that at other complexes. This was a proper attempt by the defendants to show the common practice among apartment complexes to determine if reasonable care had been exercised in this case. "[I]t does not furnish a test which is conclusive or controlling, and negligence may exist notwithstanding the means and methods adopted in accordance with those customary in the business." *Watts v. Pama Mfg. Co.*, 256 N.C. 611, 616, 124 S.E. 2d 809, 813 (1962). 1 Brandis, *supra*, at § 95.

A similar rationale applies to the defendants' evidence on the use of security guards by apartment complexes. This was evi-

dence on an industry standard of care for the jury to consider and was not conclusive.

We note that the plaintiff's witness Bopp gave his opinion that security guards were helpful. That opinion was based on his expertise in the security field, which included a knowledge of industry standards.

The plaintiff contends that defense witness Marshburn should not have been allowed to testify about lighting on the Fayetteville Street Mall or about security guards at N. C. State University and crime at those two places. This was not error because the examples were part of the basis of Marshburn's opinions that light does not deter crime and that rape can be predictable if it is part of a pattern, like a series of rapes at N. C. State.

We find no prejudice to the plaintiff from this testimony. It is "desirable and proper for an expert witness to give the reasons upon which he based his opinion. . . ." *N.C. State Highway Comm. v. Forest Lawn Cemetery, Inc.,* 15 N.C. App. 727, 729, 190 S.E. 2d 641, 642 (1972).

The plaintiff's fifth argument is that defendants' former employee Donna Crane should have been allowed to testify about the reaction of an agent of the defendants to the report of crimes at Fairway. Although this was probably excluded properly as hearsay, any error in its exclusion was harmless since there was abundant evidence in the record of notice to the defendants of crimes and their reaction to them.

Plaintiff raised other contentions including exceptions to the jury instruction which she abandoned on oral argument. We find plaintiff's trial was free of prejudicial error.

No error.

Judges WEBB and BRASWELL concur.