BERNICE B. PRINCE, AS GUARDIAN AD LITEM FOR BRITTANY HINSON, A MINOR CHILD AND AS PERSONAL REPRESENTATIVE FOR JOSHUA HINSON, DECEASED, PLAINTIFF V. O. RICHARD WRIGHT, JR., MICHAEL KENT JONES, WALL STREET INVESTMENT CORPORATION, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, DEFENDANTS

No. COA99-1528

(Filed 29 December 2000)

1. **Appeal and Error— appealability—action arising from house fire—partial dismissal—right to one proceeding**

   In an action arising from a fire in a rented house, the trial court's interlocutory order dismissing all claims against an insurance company but only some of the claims against defendant-landlords was immediately appealable by plaintiff. Plaintiff has the right to have all her claims adjudicated in a single proceeding.

2. **Negligence— house fire—inspection by insurance company—creation of duty**

   The trial court erred in a negligence action arising from a fire in a rented house by granting the insurance company's (USF&G) Rule 12(b)(6) motion to dismiss where plaintiff alleged that USF&G undertook to inspect the property and gave the impression to the family living there that it would determine whether the premises were suitable for residential purposes; the tenant, Ms. Strictland, cooperated with USF&G inspectors and alleged reliance on USF&G's representation; and one child was injured and one died in a fire. USF&G may have created for itself a duty to plaintiff which it then breached by expressly undertaking to

conduct an inspection of the suitability of the house for residential purposes and then failing to warn tenants of the dangerous conditions it discovered during that inspection.

### 3. Unfair Trade Practices— insurance company inspection of rental house—not in commerce—tenant not third-party beneficiary

The trial court properly granted an insurance company's motion for a Rule (12)(b)(6) dismissal of an unfair and deceptive practices claim arising from the company's inspection of a rental house which subsequently burned, killing one child and injuring another. The actions of USF&G in this case cannot be said to be in or affecting commerce; the tenants were not encouraged to act in any commercial manner as a result of the inspection report, they did not change their position in reliance on the report, there was no commercial relationship between the tenants and USF&G, and plaintiff (the guardian and personal representative of the children) was not an intended third-party beneficiary of the actions taken by USF&G because the report was intended to fulfill contractual obligations to the property owners.

### 4. Landlord and Tenant— house fire—landlord's knowledge of hazard—Rule 12(b)(6) dismissal

The trial court erred by granting a Rule 12(b)(6) dismissal of a claim against landlords resulting from a house fire where plaintiff alleged that the fire was caused by unsafe conditions in the home which defendants knew or should have known existed; that defendants never warned the tenants of the hazard; and that defendants failed to advise the tenants to vacate the premises.

Judge GREENE concurring.

Appeal by plaintiff from orders entered 17 May 1999 and 31 May 1999 by Judge William C. Gore, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 17 October 2000.

*Kathleen Shannon Glancy, and Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer, for plaintiff-appellant.*

*Crossley, McIntosh, Prior & Collier, by Clay A. Collier and Samuel H. MacRae, for defendant-appellees O. Richard Wright, Jr., Michael Kent Jones, and Wall Street Investment Company.*

*Hedrick & Blackwell, L.L.P., by Jeffrey H. Blackwell, for defendant-appellee United States Fidelity and Guaranty Company.*

MARTIN, Judge.

On 1 May 1996, Rodney Strickland (Mr. Strickland) entered into a residential lease agreement with Wall Street Investment Corporation, which was co-owned by O. Richard Wright and Michael Kent Jones, (defendant-landlords). Mr. Strickland moved into the house with Terri Strickland (Ms. Strickland) and her two children, Brittany and Joshua Hinson. On 5 September 1996, Hurricane Fran caused significant damage to the roof which resulted in water leaks. Three days later, a heavy rainstorm caused further water damage. Mr. Strickland notified defendant-landlords of the damage to the house on 13 September 1996. On 16 October 1996, defendant United States Fidelity and Guaranty Company (USF&G), which insured the property for defendant-landlords, undertook to inspect the house and, according to the complaint, claimed to conduct a thorough investigation. After the inspection, however, no repairs were made, nor were the tenants warned of any dangerous conditions on the premises. Four days following the inspection, on 20 October 1996, a fire broke out in the house, killing seventeen-month-old Joshua and injuring Brittany. At the time of the fire, no smoke detectors had been installed in the rental house. On 21 October 1996, USF&G caused to be prepared through NEMAX Claims Services an "Origin & Cause Investigation" report. Bernice Prince (plaintiff), the guardian *ad litem* for Brittany and the personal representative for the estate of Joshua, alleges that USF&G intentionally or negligently misrepresented or concealed facts and evidence regarding the fire in this report. Ms. Strickland was subsequently arrested and charged with the murder of her son, the attempted murder of her daughter, and first-degree arson; as a result of these charges, Brittany was taken from her mother and placed with the Department of Social Services. The charges were later dropped, and Brittany was returned to her mother. Finally, on 16 October 1998, Ms. Strickland filed an action on behalf of herself and her children against defendants; she subsequently filed a voluntary dismissal and resigned as guardian *ad litem* for Brittany and as personal representative for Joshua's estate. On 8 February 1999, plaintiff filed a First Amended Complaint representing Brittany Hinson and the estate of Joshua Hinson. In May 1999, the trial judge granted defendants' motions to dismiss. Plaintiff appeals.

[1] We first note that plaintiff has appealed from an interlocutory order. The trial court's order dismisses all claims against defendant USF&G and some but not all claims against defendant-landlords.

## PRINCE v. WRIGHT

Further, there is no certification in the order that there is "no just reason for delay" which would facilitate an immediate appeal. N.C. Gen. Stat. § 1A-1, Rule 54(b). Generally, no immediate appeal lies from an interlocutory order. *Auction Co. v. Myers*, 40 N.C. App. 570, 253 S.E.2d 362 (1979). However, when the order appealed from affects a substantial right, a party has a right to an immediate appeal. N.C. Gen. Stat. § 1-277(a); 7A-27(d)(1). An interlocutory order affects a substantial right when the order "deprive[s] the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered." *Cook v. Bankers Life & Cas. Co.*, 329 N.C. 488, 491, 406 S.E.2d 848, 850 (1991) (citation omitted). In *Driver v. Burlington Aviation, Inc.*, this Court held that the trial court's dismissal of plaintiff's claims against one defendant affected "a substantial right to have determined in a single proceeding whether plaintiffs have been damaged by the actions of one, some or all defendants where their claims arise upon the same series of transactions." 110 N.C. App. 519, 524, 430 S.E.2d 476, 480 (1993) (citation omitted). Similarly, in this case, plaintiff seeks relief against multiple defendants based on negligence, violation of the statutory duty of a landlord to repair premises, unfair and deceptive trade practices, and wrongful death, all arising from the single occurrence of a fire in a rental home. Plaintiff has the right to have all her claims adjudicated in a single proceeding. We therefore consider plaintiff's appeal.

## I.

[2] Plaintiff first assigns error to the trial court's grant of USF&G's motion to dismiss plaintiff's negligence claim. Plaintiff alleges that USF&G assumed responsibility for inspecting the home for hazards and thus violated a duty of care owed to plaintiff by failing to warn the family that a dangerous condition existed on the premises.

In reviewing a trial court's dismissal pursuant to N.C.R. Civ. P. 12(b)(6), "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 300, 435 S.E.2d 537, 541 (1993) (citation omitted), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994). Under this rule, a claim is properly dismissed " 'if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim.' " *Claggett v. Wake Forest University*, 126 N.C. App. 602, 608, 486 S.E.2d 443, 446 (1997) (citation omitted). In actions for negli-

gence, the plaintiff must allege that the defendant breached a duty owed the plaintiff, and that this breach caused actual injury to the plaintiff. *Davis v. North Carolina Dept. of Human Resources*, 121 N.C. App. 105, 465 S.E.2d 2 (1995). Negligence " 'presupposes the existence of a legal relationship between the parties by which the injured party is owed a duty which either arises out of a contract or by operation of law.' " *Sinning v. Clark*, 119 N.C. App. 515, 518, 459 S.E.2d 71, 73, *disc. review denied*, 342 N.C. 194, 463 S.E.2d 242 (1995) (citation omitted). "If there is no duty, there can be no liability." *Id.* (citation omitted).

In *Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 363 S.E.2d 367, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862 (1988), this Court held that privity of contract is not required to recover against a person "who negligently performs services for another and thus injures a third party." *Id.* at 322, 363 S.E.2d at 371-72. In *Olympic Products*, the plaintiff entered into a contract with Roof Systems to install a roof. Roof Systems then entered into a contract with manufacturer Carlisle to install a "Carlisle" roof. Carlisle, in its contract with Roof Systems, required that the installer comply with all Carlisle specifications; further, Carlisle committed itself to inspect the roof to ensure that the installer adhered to all necessary specifications and procedures. Shortly after the job was completed, the roof collapsed. Under these facts, this Court held that Carlisle owed a duty to the property owner to use reasonable care. *Id.* at 324-25, 363 S.E.2d at 373.

> "[U]nder certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person for injuries resulting from his failure to exercise reasonable care in such undertaking."

*Id.* at 323, 363 S.E.2d at 372 (quoting *Quail Hollow East Condominium Ass'n v. Donald A. Scholz Co.*, 47 N.C. App. 518, 522, 268 S.E.2d 12, 15, *disc. review denied*, 301 N.C. 527, 273 S.E.2d 454 (1980)).

> This duty to protect third parties from harm arises under circumstances where the party is in a position so that "anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other."

*Id.* (quoting *Davidson & Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666, 255 S.E.2d 580, 584, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979)).

In the case *sub judice*, USF&G contracted to provide insurance coverage for defendant-landlords. In her complaint, plaintiff alleges that USF&G, on 16 October 1996, expressly undertook to conduct an inspection "for the purpose of detecting and detailing the suitability of the house for residential purposes, including but not limited to, damage or potential damage to the electrical system due to the presence of wind driven water or moisture." During this inspection, the complaint alleges that Ms. Strickland fully cooperated with USF&G and "requested notice of any dangerous conditions discovered as a result of said inspection." The complaint alleges that plaintiff "relied upon USF&G's express undertaking of the inspection to warn them of any dangerous conditions, including fire hazards, as a result of the presence of moisture and wind driven water and possible damage to the electrical system." Finally, plaintiff alleges that USF&G failed to warn the residents of the potential fire hazard created by the water damage to the electrical wiring. Taking these factual allegations in plaintiff's complaint as true, as we are required to do in reviewing motions to dismiss, we conclude that the trial court's grant of USF&G's motion to dismiss was error. Plaintiff's complaint alleges that USF&G undertook to inspect the property and gave the impression to the family living therein that it would determine whether the premises was suitable for residential purposes; further, Ms. Strickland cooperated with USF&G inspectors and alleges reliance on USF&G's alleged representation that it would advise her of any dangerous condition existing. As mentioned above, there is no requirement that plaintiff and defendant be in privity of contract when defendant explicitly holds itself out to perform a duty which it then breaches. Under these facts, USF&G may have created for itself a duty to plaintiff which it breached by first expressly undertaking to conduct an inspection of the suitability of the house for residential purposes and then by failing to warn tenants of the dangerous conditions it discovered during that inspection. We therefore reverse the dismissal of plaintiff's negligence claim against USF&G.

II.

[3] Plaintiff next alleges the trial court erred when it dismissed plaintiff's claim against USF&G for unfair and deceptive practices in or affecting commerce. We disagree.

To establish a *prima facie* claim for unfair and deceptive practices, plaintiff must show that: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, N.C. Gen. Stat. § 75-1.1 and (3) the act proximately caused injury to the plaintiff." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citation omitted). Unfair and deceptive practices tend to involve buyer and seller relationships. *Holley v. Coggin Pontiac, Inc.*, 43 N.C. App. 229, 259 S.E.2d 1, *disc. review denied*, 298 N.C. 806, 261 S.E.2d 919 (1979). Nevertheless, courts have also recognized actions based on other types of commercial relationships, including those outside of contract. *J.M. Westall & Co., Inc. v. Windswept View of Asheville, Inc.*, 97 N.C. App. 71, 387 S.E.2d 67, *disc. review denied*, 327 N.C. 139, 394 S.E.2d 175 (1990).

In *Westall*, the defendant-developer entered into a contract with a builder-contractor to construct condominiums. *Id.* at 72, 387 S.E.2d at 67-68. The plaintiff supplied materials for the contractor. When the contractor was delinquent in making payments to the supplier, the supplier contacted the developer, who assured the supplier that the job was bonded and thus the supplier would be paid even if the contractor failed to pay. *Id.* at 72-73, 387 S.E.2d at 68. The developer then asked the plaintiff to continue supplying materials. *Id.* at 73, 387 S.E.2d at 68. The contractor, as it turned out, was not bonded, and the supplier was not paid for the materials. *Id.* This Court held that the supplier could bring an action under G.S. § 75-1.1 against the developer even though the supplier had no contract with the developer: "In this case, the defendants' alleged misrepresentations to the plaintiff related to the delivery of building materials to a third party, and as such the misrepresentations at least affect commerce while arguably they are also 'in commerce.' " *Id.* at 75, 387 S.E.2d at 69. The proper inquiry, therefore, "is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts *affected* commerce. A contractual relationship is not required in order to affect commerce." *Id.* at 75, 387 S.E.2d at 69 (citations omitted).

" 'Commerce' in its broadest sense comprehends intercourse for the purpose of trade in any form." *Id.* (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 261, 266 S.E.2d 610, 620 (1980)). The unfair and deceptive practices statute provides that commerce "includes all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b). Nevertheless, the fundamental purpose of G.S.

§ 75-1.1 is to "protect the consuming public." *Skinner v. E.F. Hutton & Co., Inc.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (quoting *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 167-68 (4th Cir. 1985)). North Carolina courts have defined the insurance business as affecting commerce, "when an insurer provides insurance to a consumer purchasing a policy." *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 10, 472 S.E.2d 358, 363 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997).

The actions of USF&G in the case *sub judice* cannot be said to be "in or affecting commerce." USF&G's actions are distinguishable from the actions of the developer giving rise to a claim under G.S. § 75-1.1 in *Westall*. USF&G contracted through NEMAX Claims Services to prepare a fire investigation report. This report was prepared for the mutual benefit of USF&G and its insured: defendant-landlords. Although plaintiff's allegations, taken as true, indicate that USF&G may have acted in bad faith in having the report prepared, these actions cannot be construed as "intercourse for the purpose of trade" with plaintiff. *Westall*, 97 N.C. App. at 75, 387 S.E.2d at 69. The tenants in this case were not encouraged to act in any commercial manner as a result of the report, nor did they change their position in reliance on the report. Indeed, there was no commercial relationship between the tenants and USF&G which can be said to have affected commerce. Plaintiff argues that Brittany Hinson was removed from her mother's home and placed with the Department of Social Services as a consequence of the false report, but there is no indication in the complaint how this outcome, even if taken as true, involved or affected commerce. Under these facts, USF&G's alleged actions, as they relate to plaintiff, cannot be characterized as "in or affecting commerce."

Additionally, in *Wilson v. Wilson*, 121 N.C. App. 662, 468 S.E.2d 495 (1996), this Court held that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C.G.S. § 75-1.1." *Id.* at 665, 468 S.E.2d at 497. This is true, however, only when the plaintiff is neither an insured nor in privity with the insurer. *See Murray v. Nationwide*, 123 N.C. App. at 15, 472 S.E.2d at 367 (allowing plaintiff's unfair and deceptive practices claim because "[t]he injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party," and was thus in contractual privity with the insurance company). Accordingly, while

a plaintiff generally cannot sue the insurance company of an adverse party under G.S. § 75-1.1, if the plaintiff achieves the status of an intended third-party beneficiary arising from the contractual relationship between the adverse party and the adverse party's insurance company, the plaintiff may then bring a claim against the insurance company for violating the unfair and deceptive practices statute.

In the present case, USF&G contracted for an "Origin & Cause Investigation" report to be prepared as a result of the house fire which occurred on 20 October 1996. Plaintiff contends USF&G made intentional misrepresentations, concealed facts and evidence, and acted in bad faith in the investigation and reporting of the causes of the house fire. Plaintiff, however, was not the intended third-party beneficiary of the contractual relationship between defendant-landlords and USF&G. USF&G insured the property against loss or damage for the benefit of the owners of the property. As part of its contractual obligations to its insured, USF&G contracted with NEMAX Claims Services to produce a report on the house fire. This report was not intended to benefit the tenants living on the property, but to fulfill contractual obligations with the property owners. Additionally, defendant-landlords did not enter into the insurance policy with USF&G with the intent to benefit potential tenants living in the residence, but rather paid for the coverage to reduce or eliminate loss caused by circumstances such as a house fire. Because plaintiff was not an intended third-party beneficiary in the actions taken by USF&G, there is no privity between USF&G and plaintiff, and plaintiff may not assert a claim against USF&G for unfair and deceptive trade practices. This assignment of error is overruled, and we affirm the trial court's order dismissing plaintiff's claim under G.S. § 75-1.1.

III.

[4] Finally, plaintiff asserts the trial court erred when it dismissed plaintiff's claim against defendant-landlords. Because landlords have a common law duty to warn tenants of hazardous conditions of which they know or should know, we reverse the trial court's order.

Landlords owe a statutory duty of care to tenants. According to the Residential Rental Agreement Act, landlords shall "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42-42(a)(2). This Act, however, was not intended to supplant existing common law remedies available to tenants. *Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 68, 376 S.E.2d 425, 428 (1989). "The com-

mon-law standard of care is a generalized one of 'due care' on the part of the defendant. The standard of due care is always the conduct of a reasonably prudent person under the circumstances." *Id.* (citation omitted). Although the North Carolina Supreme Court has recently disposed of the traditional invitee-licensee distinctions in premises liability cases in favor of the reasonably prudent person standard, *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), North Carolina case law has consistently held that tenants were invitees of landlords and that landlords had a duty to warn invitees of hazardous conditions. "A tenant is normally seen as an invitee and the liability of a landlord for physical harm to its tenant depends on if it knows of the danger." *Shepard v. Drucker & Falk*, 63 N.C. App. 667, 669, 306 S.E.2d 199, 201 (1983). Thus, "[a] landlord owes a duty to an invitee to use reasonable care to keep the premises safe and *to warn of hidden dangers*, but he is not an insurer of the invitee's safety." *Clary v. Alexander County Board of Education*, 19 N.C. App. 637, 639, 199 S.E.2d 738, 739 (1973), *rev'd on other grounds*, 286 N.C. 525, 212 S.E.2d 160 (1975) (emphasis added).

In the instant case, a fire broke out in the leased home on 20 October 1996, killing Joshua Hinson and injuring Brittany Hinson. Plaintiff alleges the fire was caused by unsafe conditions in the home which defendant-landlords knew or should have known existed. Prior to this house fire, defendant-landlords never warned the tenants of the potential fire hazard; they also failed to advise the tenants to vacate the premises because of the hazardous conditions. Defendant-landlords had a duty to warn tenants of any danger about which they knew or had reason to know. We therefore find the trial court's order granting defendants' motion to dismiss on this issue was improper, and we reverse.

Reversed in part, affirmed in part.

Judge EDMUNDS concurs.

Judge GREENE concurs in a separate opinion.

Judge GREENE concurring.

*Unfair or deceptive trade practices claim*

A claim for unfair or deceptive trade practices "may not be asserted by a third-party claimant against the insurer of an adverse

party." *Wilson v. Wilson*, 121 N.C. App. 662, 665, 468 S.E.2d 495, 497 (1996); *see also Lee v. Mutual Community Sav. Bank*, 136 N.C. App. 808, 811, 525 S.E.2d 854, 857 (2000). I, therefore, agree with the majority for this reason that plaintiff, a third-party, may not assert an unfair or deceptive trade practices claim against USF&G, the insurer of an adverse party. Accordingly, the trial court properly dismissed plaintiff's claim against USF&G for unfair or deceptive trade practices.

### Failure to warn claim against landlords

In *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), the North Carolina Supreme Court "eliminated the distinctions between licensees and invitees, and established 'a standard of reasonable care toward all lawful visitors.' " *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 161, 516 S.E.2d 643, 646 (quoting *Nelson*, 349 N.C. at 631, 507 S.E.2d at 892), *cert. denied*, 351 N.C. 107, —— S.E.2d —— (1999). Pursuant to *Nelson*, a landowner is "required to exercise reasonable care to provide for the safety of all lawful visitors on his property." *Id.* A landowner, therefore, must "take reasonable precautions to ascertain the condition of the property *and* to either make it reasonably safe or give warnings as may be reasonably necessary to inform the [lawful visitor] of any foreseeable danger." *Id.* at 161-62, 516 S.E.2d at 646.

In this case, Joshua Hinson and Brittany Hinson, as tenants of the landlords, were lawful visitors on the landlords' property. The landlords, therefore, had a duty to make the property reasonably safe or to warn the Hinsons of any foreseeable dangers. Accordingly, I agree with the majority for this reason that the trial court erred by dismissing plaintiff's claim against the landlords for failure to warn.

I otherwise fully concur with the majority.