DANIEL L. DAVENPORT, PLAINTIFF v. D.M. RENTAL PROPERTIES, INC. D/B/A HENRY MOBILE HOME PARK AND HENRY MOORE IN HIS INDIVIDUAL CAPACITY, DEFENDANTS

No. COA11-231

(Filed 15 November 2011)

**Premises Liability—landowner's failure to keep property safe—personal injuries—no reasonable safety measure would have deterred assault**

The trial court did not err in a personal injuries case arising out of an assault on defendants' property by granting summary judgment in favor of defendant based on insufficient evidence to establish a *prima facie* case of actionable negligence. No reasonable safety measure would have deterred the attack on defend-ants' property, and thus, defendants were not liable for the assault based on an alleged failure to make the property safe.

Appeal by Plaintiff from order entered 2 December 2010 by Judge Mark E. Klass in Gaston County Superior Court. Heard in the Court of Appeals 31 August 2011.

*The Bumgardner Law Firm, by Thomas D. Bumgardner, for Plaintiff.*

*Bolster Rogers & McKeown, LLP, by Jeffrey S. Bolster, for Defendants.*

STEPHENS, Judge.

Plaintiff Daniel L. Davenport commenced this action against D.M. Rental Properties, Inc. ("DMRP") and DMRP's president Henry Moore (collectively, "Defendants") seeking damages for personal injuries sustained while Davenport was a tenant of Henry Mobile Home Park, a 10-acre, 20-lot residential community owned by DMRP. In their answer to Davenport's complaint, Defendants denied all allegations of negligence and asserted various affirmative defenses, including contributory negligence, assumption of risk, and intervening criminal conduct of a third party. Both parties filed motions for summary judgment.

The forecast of evidence on summary judgment tended to show the following: On 19 July 2009, Tony Herrin, another tenant at Henry Mobile Home Park, began an altercation with Davenport on Defendants' property. Around 7:00 p.m., Herrin, who "had been drinking quite heavily," drove his car "slam up on top of the [ ] tire" of a bicycle on which Davenport's wife was sitting. Thereafter, Herrin encountered Davenport's wife riding the bicycle and, after grabbing its rear wheel, attempted to wrest the bicycle from Davenport's wife. Davenport's wife grabbed the front wheel and handlebars and attempted to pull the bicycle back. When Davenport's wife let go of the bicycle, Herrin and the bicycle landed in a culvert. When Davenport attempted to retrieve the bicycle, Herrin stomped on the bicycle's wheel and shouted, "You want some of me, you old [ ] bastard?" Herrin then placed his hand on his utility knife and threatened Davenport. In response, Davenport put his hands to Herrin's neck and pushed Herrin back into the culvert. When Herrin got out of the culvert, he punched Davenport in the jaw.

Davenport left Herrin, went inside his trailer, and called the police. Shortly thereafter, Davenport and his wife saw Herrin swinging a shovel at their pets and went outside to confront him. Davenport and his wife fought Herrin with a shovel and a rake for several minutes until Herrin discovered that he was bleeding. Herrin shouted, "I'm [ ] burning y'all!" He then retrieved a container of gasoline from his property, ran at Davenport with the gasoline and a lighter, and set Davenport on fire. Davenport sustained severe burns.

Following a hearing on the parties' motions, the trial court entered an order denying Davenport's motion for summary judgment and granting summary judgment for Defendants. Davenport appeals.

On appeal, Davenport contends that the trial court erred by granting Defendants' summary judgment motion because Davenport "established a *prima facie* case of actionable negligence." We are unpersuaded.

A *prima facie* case of negligence liability is alleged when a plaintiff shows that: defendant owed him a duty of care; defendant's conduct breached that duty; the breach was the actual and proximate cause of plaintiff's injury; and damages resulted from the injury. *Southerland v. Kapp*, 59 N.C. App. 94, 95, 295 S.E.2d 602, 603 (1982). Davenport contends that Defendants breached a duty owed to Davenport by (1) negligently failing to take measures to make their property safe; (2) negligently leasing property to Herrin; and (3) negligently failing to evict Herrin. Davenport further contends the breaches proximately caused his injuries. Each alleged duty and breach is discussed separately below.

### *Failure to make property safe*

As correctly noted by Davenport, a landlord has a duty to exercise reasonable care to protect his tenants from third-party criminal acts that occur on the premises if such acts are foreseeable. *See Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638-39, 281 S.E.2d 36, 38 (1981) (holding that a proprietor of a public business establishment has a duty to exercise reasonable care to protect his patrons from intentional injuries by third persons, if he has reason to know that such acts are likely to occur); *see also Murrow v. Daniels*, 321 N.C. 494, 501, 364 S.E.2d 392, 397 (1988) (noting that foreseeability is the test in determining the existence of such a duty); *Shepard v. Drucker & Falk*, 63 N.C. App. 667, 669, 306 S.E.2d 199, 201 (1983) ("A tenant is normally seen as an invitee and the liability of a landlord for physical harm to its tenant depends on if it knows of the danger."). However, assuming *arguendo* the evidence presented by Davenport was sufficient to raise a triable issue of fact as to whether an assault on a tenant was foreseeable such that Defendants had a duty to exercise reasonable care to prevent that assault, we cannot conclude that Defendants' breach of that duty proximately caused Davenport's injuries.

Davenport argues that Defendants breached their duty by failing to install security cameras, hire security guards, install fences, or post warning signs. As has been recognized by this Court, such mea-

sures are preventative in nature and their purpose is to deter criminal activity on the premises. *See Liller v. Quick Stop Food Mart, Inc.*, 131 N.C. App. 619, 625-26, 507 S.E.2d 602, 606-07 (1998) (discussing how "the provision of security guards and installation of a security surveillance or burglar alarm system . . . or any other measures" could have prevented the plaintiff's assault; noting expert testimony on deterrent effect of security precautions); *Shepard*, 63 N.C. App. at 668, 306 S.E.2d at 201 (in syllabus of opinion, noting expert testimony on security measures' deterrent effect on intruder-related crime); *Urbano v. Days Inn of Am., Inc.*, 58 N.C. App. 795, 798, 295 S.E.2d 240, 242 (1982) (citing Wisconsin Supreme Court decision stating that "failure to maintain adequate security measures not only permits but may even encourage intruders to rob or assault [ ] patrons"). As such, where the proposed safety measures would not have prevented the plaintiff's injury, the alleged negligent failure to take such measures could not have constituted a proximate cause of the plaintiff's injury. *Liller*, 131 N.C. App. at 625-26, 507 S.E.2d at 606-07 (holding that where assailant would not have been reasonably deterred by security precautions, failure to take those precautions cannot constitute the proximate cause of the assault on the plaintiff). So it is in this case.

The safety measures that Davenport alleges Defendants negligently failed to provide—cameras, guards, fences, signs—would not have prevented Herrin's attack on Davenport. According to Davenport, Herrin had "a really bad crack habit and a drinking habit," became delusional and aggressive when intoxicated, and was "pretty well toasted [ ] on beer" on the evening of Davenport's assault. After falling in the culvert with the bicycle, Herrin became enraged, cursed at Davenport's wife, warped the bicycle's tire, and began threatening Davenport. Throughout the altercation, Davenport observed that Herrin was "doing all kind of mumbo-jumbo talk, screaming and hollering," "talking in tongue," and looking like "the devil himself." Further, Herrin was not deterred by Davenport's threats to call the police, and after Davenport called the police and informed Herrin thereof, Herrin continued to provoke and attack Davenport in spite of an increased likelihood of apprehension.

In our view, the foregoing evidence shows that Herrin would not have been deterred by any reasonable safety measures on Defendants' property. *See id.* (holding that security measures would not have prevented plaintiff's assault based on evidence that the assailant "appeared to be intoxicated or high on drugs," had a "wild look" on his face, and "shot plaintiff in front of a well-lighted store

and thereupon chased plaintiff into the store to shoot him again, thereby increasing the likelihood of identification and apprehension"). Rather than showing that either a lack of deterrents or an opportunity created by the premises' condition caused, or promoted in any way, Herrin's assault on Davenport, the evidence in this case tends to show that Herrin's intoxicant-induced aggression and a prior incident with Davenport's wife were the causes of Herrin's assault. We, thus, conclude that Defendants cannot be held liable for Herrin's assault based on an alleged failure to make the property safe.

### Lease of property

Davenport further argues that Defendants "were obligated to ensure a reasonable procedure for screening potential residents." Davenport's only support for this argument is a general "Statement of Public Policy" from Article 7 of Chapter 42 of the North Carolina General Statutes, a group of statutes which provide for expedited eviction of criminals by landlords. N.C. Gen. Stat. § 42-59, *et seq.* (2009). That article, however, does not impose any obligations for screening potential tenants and certainly does not impose any liability for a failure to do so.

Further, we find compelling the following discussion by a Massachusetts court on some of the policy concerns raised by imposing on landlords a duty to decline housing:

A landlord cannot reasonably be expected to control the interpersonal relationships of tenants or to predict from a criminal record whether one friend poses a threat to another friend, both of whom live in the same apartment building. To impose liability [in such a case] would induce landlords to decline housing to those with a criminal record in the absence of evidence of an actual threat to cotenants or individual tenants. That would only export the "problem" somewhere else. The resulting unstable living conditions or homelessness may increase the chances of recidivism to the detriment of public safety . . . .

*Anderson v. 124 Green St., LLC*, No. SUCV2009-2626-H, 2011 Mass. Super. LEXIS 24, at *15-16 (Mass. Super. Ct. Jan. 21, 2011).

Based on the foregoing, we conclude that Defendants cannot be held liable for their allegedly negligent leasing of property to Herrin.

*Failure to evict*

Although we have recognized a landowner's duty to exercise reasonable care to protect tenants from foreseeable third-party criminal acts, we have never recognized as included in that duty to protect the duty to evict a tenant. While other jurisdictions have recognized such a duty, for the following reasons we decline to do so in this case.

First, presuming that the duty to evict is not a separate duty imposed by the landlord-tenant relationship, but rather is an extension of a general landowner's duty to protect those lawfully on his property from foreseeable third-party criminal acts, foreseeability of a future criminal act by the third-party tenant/assailant—as shown by evidence of *relevant* prior criminal acts by the third-party tenant on the premises, *cf. Connelly v. Family Inns of Am., Inc.*, 141 N.C. App. 583, 588-89, 540 S.E.2d 38, 41-42 (2000)—would logically be the test for determining the existence of the duty. *See, e.g., Cusmano v. Lewis*, 55 Pa. D. & C.4th 1, 5-6 (2002) (recognizing a potential duty to evict where defendant mobile home park had knowledge of a tenant's minor child's dangerous propensities and failed to act); *Anderson*, 2011 Mass. Super. LEXIS 24, at *10 ("A duty to evict . . . may arise where the landlord knows of a specific threat that one tenant poses to another or where there is a history of violence by one tenant against other tenants."); *Williams v. Gorman*, 214 N.J. Super. 517, 521-23, 520 A.2d 761, 764 (1986) (discussion of landlord's potential duty to evict); *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (2009) (discussing possible duty to evict where harm was foreseeable). In our view, however, the evidence of Herrin's prior conduct at Henry Mobile Home Park—which certainly did not portray Herrin as a model tenant, but which also did not indicate a propensity for violence at the level of his attack on Davenport—was insufficient to establish the foreseeability of the assault in this case. On the contrary, the evidence in this case clearly establishes (1) that Herrin and Davenport's relationship was at least cordial prior to the assault, and (2) the sudden descent from tolerant cordiality to intense hostility was due entirely to Herrin's intoxication and his run-in with Davenport's wife. As rightly stated by a Massachusetts court, "[a] landlord cannot reasonably be expected to control the interpersonal relationships of tenants." *Anderson*, 2011 Mass. Super. LEXIS 24, at *15. We conclude that imposing liability on Defendants under these circumstances would place just such an unreasonable burden on landlords in North Carolina.

DAVENPORT v. D.M. RENTAL PROPERTIES, INC.

[217 N.C. App. 133 (2011)]

Second, irrespective of a potential duty to evict imposed by Defendants' duty to protect its tenants, we disagree with Davenport's contention that Defendants' eviction of Herrin was mandated by section 42-59.1. As discussed *supra*, this section, and the article in which it is contained, provides landlords with the *power* to evict tenants engaged in certain criminal activity, but neither mandates eviction nor imposes liability on a landlord for failing to evict. Accordingly, Davenport's contention is meritless.

Finally, we disagree with Davenport that the parties' rental agreement imposes liability on Defendants for their failure to evict Herrin. Although there is some evidence that Herrin violated several terms of the agreement—and the agreement states that failure to obey the rules of the agreement "shall be an event of default"—the portion of the agreement in the record does not provide for the consequences of "an event of default." Accordingly, there is no evidence that Herrin's prior violation of the agreement warranted eviction under the agreement. Further, there is nothing to indicate that Defendants' failure to evict under the agreement resulted in liability. Therefore, we conclude that Defendants cannot be held liable for Davenport's injury based on their alleged failure to evict Herrin.

In summary, Davenport has failed to allege a *prima facie* claim of negligence liability against Defendants. Accordingly, we hold that the trial court did not err in granting summary judgment for Defendants. The order of the trial court is

AFFIRMED.

Judges ERVIN and BEASLEY concur.