KIRSTEN DURLING, TIM HULL, AND DEE NICHOLS v. KEVIN J. KING, INDIVIDUALLY, KEVIN J. KING D/B/A KEVIN J. KING AND RBT ENTERPRISES

No. COA00-707

(Filed 16 October 2001)

**1. Unfair Trade Practices— sufficiency of evidence—in or affecting commerce**

The trial court did not err by denying plaintiffs' motions for treble damages under N.C.G.S. § 75-16 where there was evidence of a breach of contract involving sales commissions, but there was no evidence that these transactions had any impact beyond the parties' employment relationships or that defendant's behavior was "in or affecting commerce."

**2. Unfair Trade Practices— attorney fees—denied**

The trial court correctly denied plaintiffs' motion for attorney fees under N.C.G.S. § 75-16.1 where plaintiffs did not prevail on their claim under N.C.G.S. § 75-1.1.

**3. Unfair Trade Practices— damages—basis**

The trial court should not have awarded damages to plaintiffs for alleged unfair or deceptive trade practices based upon a jury finding where the judge correctly found that the defendant's acts did not meet the requirements for recovery under N.C.G.S. § 75-1.1. The judge's ruling eliminated plaintiffs' theory of recovery and left no basis for the award of damages beyond those resulting from a breach of contract.

**4. Evidence— cross-examination—limited—no error**

The court neither prevented defendant from conducting cross-examination nor abused its discretion in limiting cross-

examination in an action concerning compensation for Beanie Baby sales reps; moreover, the court was not required to enter a judgment that reflected particular parts of a witness's testimony that may have been contradicted by other testimony or evidence.

**5. Jury— notation on verdict sheet—validity of verdict**

A judgment in an action arising from unpaid sales commissions was supported by the verdict sheet where the jury was instructed to consider two possible sources of injury and the damages awarded for those injuries were separate amounts, even though the foreman also totaled the damages. The additional notation did not affect the validity of the verdict.

**6. Judgments— entry—notice to opposing party by fax**

A judgment was properly entered where it was reduced to writing, signed by the judge, and filed with the clerk, but faxed. N.C.G.S. § 1A-1, Rule 5 does not authorize the use of facsimile machines for service of documents, but the procedures for serving all parties with a copy of a judgment after its entry under N.C.G.S. § 1A-1, Rule 58 are separate and distinct and the method of service of copies of the judgment is not a statutory criteria for entry of judgment. Moreover, defendant clearly had notice of the entry of judgment, and any procedural errors in plaintiffs' service of the first judgment upon defendant were rendered irrelevant by a subsequent amended judgment awarding the same damages.

Appeal by defendant from judgment entered 12 November 1999 and from amended judgment entered 20 January 2000, and by plaintiffs from amended judgment entered 20 January 2000. Judgments entered by Judge Wiley F. Bowen in Wake County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Van Camp, Hayes, & Meacham, P.A., by Michael J. Newman for defendant.*

*Sanford Holshouser Law Firm, PLLC, by Kieran J. Shanahan and Daniel G. Cahill for plaintiffs.*

BIGGS, Judge.

Kevin J. King, individually and d/b/a Kevin J. King and RBT Enterprises, (defendant) appeals from the trial court's judgment and amended judgment finding defendant liable for breach of contract

and for other injurious behavior towards Kirsten Durling, Tim Hull, and Dee Nichols (Durling, Hull, and Nichols, or, collectively, plaintiffs), and awarding damages to plaintiffs. The plaintiffs cross-appeal from the amended judgment's conclusion that the defendant had not engaged in deceptive and unfair trade practices, and from its denial of plaintiffs' motion for attorneys' fees and treble compensatory damages. We affirm in part and reverse in part.

Ty, Inc. is a manufacturer of toys and gift products, most notably small stuffed animals known as "Beanie Babies." Defendant began employment with Ty in 1992 as a salaried employee, and became a regional sales representative in 1995. As a sales representative, defendant traveled to card and gift shops in North Carolina to obtain orders for Ty, Inc.'s products. Pursuant to his employment contract, the defendant was allowed to hire "sub-representatives" to assist him in managing his sales contracts. This proved necessary in 1997, when Beanie Babies became immensely popular, and he could no longer manage all of the Beanie Baby contracts alone. Accordingly, defendant hired Nichols, Hull, and Durling. He assigned each of them Beanie Baby sales accounts to service, although he remained responsible to Ty, Inc. for the accounts. The parties agreed that plaintiffs would be paid on a commission basis, to be determined by the value of sales that were paid for and shipped by Ty to its customers. This lawsuit arises out of a dispute over these commissions.

Plaintiffs had no direct employment or contractual relationship with Ty, but only with defendant. Therefore, the documents that confirmed orders placed with and shipped by Ty were sent directly to defendant. These included shipping invoices and monthly sales summaries, from which defendant determined the commissions owed to plaintiffs. During 1997 and 1998, plaintiffs became concerned that defendant was not providing them with all the relevant sales information, or paying them all the commissions they were owed. The employment relationship among the parties ended in 1998.

On 13 October 1998, plaintiffs filed suit against defendant and against Ty, Inc., alleging breach of contract, unfair and deceptive trade practices, negligent retention and supervision (by Ty, Inc., in its supervision of defendant), conversion, and unjust enrichment (*quantum meruit*). Plaintiffs sought an accounting of all commissions owed them, as well as costs, attorneys' fees, and treble compensatory damages. Defendant moved for summary judgment, which the trial court granted with respect to the claims for unjust enrichment and

conversion. Before trial, plaintiffs dismissed their claims against Ty, Inc., leaving only the present defendant.

A jury trial was held in November, 1999. The jury found that defendant had breached his contracts with plaintiffs, and awarded damages for breach of contract in the amounts of $106,000 (Nichols), $24,000 (Durling), and $57,000 (Hull). The jury also answered the following questions affirmatively:

> 3. Did defendants do any one or more of [the] acts listed in the special interrogatories?
>
> Special Interrogatories
>
> (1) Did the defendant Kevin J. King, individually or through his trade names, Kevin J. King or RBT Enterprises, [make] efforts to conceal from the Plaintiffs or otherwise prevent them from discovering the true amount of money they were owed pursuant to the commission agreement[?]
>
> (2) Did the defendant Kevin J. King, individually or through his trade names, Kevin J. King or RBT Enterprises, wilfully and unfairly [use] his position of power to retain funds due and owing to Plaintiff[s] after being requested to pay these funds to the plaintiff[?]

The jury found that each plaintiff was entitled to $22,000 "as a proximate cause of defendant's conduct," described in the special interrogatories, adding these damages to those owed for breach of contract, for total damages of $128,000 (Nichols), $46,000 (Durling), and $79,000 (Hull). The trial court entered a judgment reflecting this verdict, from which the defendant appealed on 18 November 1999. Following plaintiffs' motion for treble compensatory damages and attorney's fees, the trial court entered an amended judgment on 20 January 2000. The amended judgment awarded each plaintiff the same amount as in its original judgment, and denied plaintiffs' motions. Defendant gave notice of appeal from this judgment on 7 February 2000; plaintiffs gave notice of appeal from the denial of their motions on 1 February 2000.

## Plaintiffs' Appeal

[1] Plaintiffs assign error to the trial court's denial of their motions for treble damages under N.C.G.S. § 75-16 (1999), and for attorneys' fees under N.C.G.S. § 75-16.1 (1999). We will consider their argument together with defendant's contention that the trial court erred in "per-

mitting plaintiffs to recover both breach of contract damages and damages for alleged violations of Chapter 75," because the two arguments are related. We affirm the trial court's holding that the defendant's conduct did not constitute unfair or deceptive trade acts or practices, and its consequent refusal to award treble damages to plaintiffs. However, because we affirm the trial court's ruling that plaintiffs did not prove unfair or deceptive trade practices under Chapter 75, we vacate the award to each plaintiff of $22,000 damages for the alleged deceptive or unfair acts.

Plaintiffs moved for treble damages in connection with their claim for damages under N.C.G.S. § 75-1.1 (1999) for unfair and deceptive trade practices. N.C.G.S. § 75-1.1, "Methods of competition, acts and practices regulated; legislative policy," provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." If a plaintiff proves damages arising under this statute, he or she is automatically entitled to treble damages pursuant to G.S. § 75-16, which states:

> If any person shall be injured or the business of any person . . .
> injured by reason of any act or thing done by any other person,
> firm or corporation in violation of the provisions of this Chapter,
> such person, firm or corporation so injured shall have a right of
> action on account of such injury done, and if damages are
> assessed in such case judgment shall be rendered in favor of the
> plaintiff and against the defendant for treble the amount fixed by
> the verdict.

Plaintiffs contend that the jury's affirmative answers to Issues three and four of the verdict sheet which set forth the alleged unfair and deceptive acts, and Issue five which sets forth damages for the alleged acts, establish a violation of G.S. § 75-1.1, and thus entitle them to treble the damages awarded under Issue five. However, a successful claim under G.S. § 75-1.1 requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to the claimant. *Rawls & Associates v. Hurst*, 144 N.C. App. 286, 550 S.E.2d 219 (2001); *Market America, Inc. v. Christman Orth*, 135 N.C. App. 143, 520 S.E.2d 570 (1999), *disc. review denied*, 351 N.C. 358, 542 S.E.2d 213 (2000). The jury decides whether the defendant has committed the acts complained of. If it finds the alleged acts have been proved, the trial court then determines as a matter of law whether those acts constitute

unfair or deceptive practices in or affecting commerce. *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E.2d 375 (1988); *Poor v. Hill,* 138 N.C. App. 19, 530 S.E.2d 838 (2000); *Allen v. Roberts Const. Co. Inc.,* 138 N.C. App. 557, 532 S.E.2d 534, *disc. review denied,* 353 N.C. 261, 546 S.E.2d 90 (2000). In the instant case, the jury found that the defendant had committed the acts described in the special interrogatories. The trial court then held in its amended judgment that "the defendants' conduct, as found by the jury in their answers to the special interrogatories, does not constitute unfair and deceptive trade acts or practices." We affirm the trial court's ruling and its denial of treble damages.

The primary purpose of G.S. § 75-1.1 is to provide a "private cause of action for consumers." *Gray v. N.C. Underwriting Ass'n,* 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Although commerce is defined broadly under G.S. § 75-1.1(b) as "all business activities, however denominated," "the fundamental purpose of G.S. § 75-1.1 is to protect the consuming public." *Prince v. Wright,* 141 N.C. App. 262, 268-69, 541 S.E.2d 191, 197 (2000). Typically, claims under G.S. § 75-1.1 involve buyer and seller. *Holley v. Coggin Pontiac,* 43 N.C. App. 229, 259 S.E.2d 1, *disc. review denied,* 298 N.C. 806, 261 S.E.2d 919 (1979). Thus, the statute usually is not applicable to employment disputes. *Dalton v. Camp,* 353 N.C. 647, 548 S.E.2d 704 (2001) (act intended to benefit consumers); *HAJMM Co. v. House of Raeford Farms,* 328 N.C. 578, 403 S.E.2d 483 (1991) (although the statute has been extended to business relationships when appropriate, it is "clearly intended to benefit consumers"); *Buie v. Daniel International,* 56 N.C. App. 445, 289 S.E.2d 118, *disc. review denied,* 305 N.C. 759, 292 S.E.2d 574 (1982) (employer-employee relationships not within intended scope of the law). Nonetheless, "the mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim." *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001). *See, e.g., Sara Lee Corp. v. Carter,* 351 N.C. 27, 519 S.E.2d 308 (1999) (employee guilty of unfair and deceptive trade acts where he starts his own company, which then sells computer hardware and services to his employer at inflated prices); *Kewaunee Scientific Corp. v. Pegram,* 130 N.C. App. 576, 503 S.E.2d 417 (1998) (when purchasing manager buys products for the company from partnerships in which he was partner, his activities affect commerce). The proper inquiry "is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts <u>affected</u>

commerce." *Prince v. Wright*, 141 N.C. App. 262, 268, 541 S.E.2d 191, 197 (2000). What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace. *Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 9 L. Ed. 2d 325 (1963).

The evidence presented in the instant case was that the parties were engaged in a dispute over the amount of commissions that defendant owed to plaintiffs. Defendant's actions in withholding commissions that were owed to plaintiffs were a breach of the contracts that he had made with plaintiffs. However, no evidence was presented that the subject transactions had any impact beyond the parties' employment relationships. There is no indication that defendant's behavior was "in or affecting commerce." Accordingly, we find that the trial court was correct in its ruling that defendant's actions did not amount to a violation of G.S. § 75-1.1.

[2] We also affirm the trial judge's denial of plaintiffs' motion for attorneys' fees. Attorneys' fees may be awarded in a case alleging unfair or deceptive trade practices only to "the prevailing party." G.S. § 75-16.1; *Evans v. Full Circle Productions*, 114 N.C. App. 777, 443 S.E.2d 108 (1994). In the instant case, the plaintiffs did not prevail on their claim of a violation of G.S. § 75-1.1. Thus, plaintiffs were not entitled to an award of attorneys' fees. Consequently, we affirm the trial court's denial both of treble damages and of attorneys' fees.

[3] Defendant argues that plaintiffs should not have been allowed damages for the acts submitted to the jury in support of plaintiffs' claim of unfair or deceptive trade practices. We agree with this contention. The trial judge correctly found that the defendant's acts did not meet the requirements for recovery under G.S. § 75-1.1. The trial judge's ruling eliminated plaintiffs' theory of recovery, and left no basis for the award of damages beyond those found to result from defendant's breach of contract. Consequently, we vacate the part of the judgment and amended judgment awarding each plaintiff $22,000 damages for alleged unfair or deceptive trade acts or practices.

### Defendant's Appeal

[4] Defendant argues that the trial court erred in its limitation of his cross-examination of Nichols. Defendant's contention is that the trial judge prevented him from exploring inconsistencies between dollar amounts stated in Nichols' trial testimony and the figures listed in the various charts, ledgers, and other documents submitted by plaintiffs.

Defendant also argues that the trial judge was obligated to enter judgment in an amount that reflected specific testimony by Nichols, even though the testimony was contradicted by other evidence or testimony. We disagree with both of these contentions.

The general rule regarding cross-examination is that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611 (b) (1999). Nichols' calculations of her unpaid commissions were relevant to the issues of whether she was owed any unpaid commissions and, if so, in what amount. Thus, this was a proper subject for cross-examination. However, Rule 611 also provides that:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Rule 611(a). "[T]he scope of cross-examination rests largely within the trial court's discretion and is not ground for reversal unless the cross-examination is shown to have improperly influenced the verdict." *State v. Parker*, 140 N.C. App. 169, 183, 539 S.E.2d 656, 666 (2000), *disc. review denied*, 353 N.C. 394, 547 S.E.2d 37 (2001) (citation omitted).

In the instant case, the record indicates that King's cross-examination of Nichols extends for approximately one hundred pages of transcript. King obtained repeated concessions from Nichols that she probably had made some mathematical errors in her calculation of the commissions owed. Indeed, *most* of this cross-examination concerns the mathematical method by which plaintiffs attempted to determine whether King owed them any unpaid commissions. Any inconsistency between the amount of unpaid commissions presented in plaintiffs' exhibits and Nichols's trial testimony was available for the jury's consideration. Moreover, King himself testified concerning the same matters, followed by Nichols's rebuttal testimony, and a second cross-examination of Nichols. We find that the trial court neither prevented King from conducting cross-examination, nor abused its discretion in limiting cross-examination. We also find that the trial court was not required to enter a judgment that reflected particular parts of Nichols's testimony that may have been contradicted by other testimony or evidence. *See State v. Pallas,*

144 N.C. App. 277, 548 S.E.2d 773 (2001) (contradictions in evidence are for the jury to resolve); *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 171, 510 S.E.2d 690, 697, *disc. review denied*, 350 N.C. 379, 536 S.E.2d 70 (1999) ("trier of fact, in this case the jury, must resolve issues of credibility and determine the relative strength of competing evidence"). For these reasons, this assignment of error is overruled.

Defendant next argues that the trial court erred in its denial of defendant's motion for a directed verdict on the claim of unfair and deceptive trade practices. However, we have held above that the portion of the judgment awarding damages for purported unfair or deceptive trade acts or practices must be vacated. This ruling renders harmless any error in the court's denial of defendant's motion for directed verdict on the issue of unfair and deceptive trade practices.

[5] Finally, defendant argues that the judgment entered by the court in this case did not accurately reflect the jury's verdict, and was not properly entered. We disagree with both contentions.

The jury was given five issues to answer regarding possible injury and damages to plaintiffs. These issues may be summarized as follows:

Issue One: Did the defendant breach his contracts with any or all of the plaintiffs?

Issue Two: If there was a breach of contract, what damages resulted from the breach?

Issue Three: Did the defendant either (a) make efforts to conceal from the plaintiffs, or otherwise prevent them from discovering, the true amount of commissions owed them, or (b) willfully and unfairly use his position of power to retain funds due to the plaintiffs after being requested to pay these funds?

Issue Four: If defendant did either or both of the acts in Issue three, did this cause damage to the plaintiffs?

Issue Five: What amount of damages were caused by the behavior described in the special interrogatories?

The jury was instructed to consider two possible sources of injury, and each verdict sheet had two spaces for entry of dollar amounts: Issues two and five. The jury answered Issues one, three,

and four affirmatively for each plaintiff, and entered the dollar amount owed to each plaintiff in Issues two and five. Below the dollar amount entered for Issue five, the foreman totaled the entries from Issues two and five. This notation did not affect the validity of the verdict, nor render the verdict or judgment erroneous. We find that the verdict sheets were correctly completed. The defendant argues that each plaintiff was entitled to only $22,000, the amount entered in response to Issue Five. We find no support in the record for this position. The trial court instructed the jury as follows on the damages that could be awarded in response to Issues 2 and 5:

[SECOND ISSUE:]

THEN THE **SECOND** ISSUE IS, WHAT AMOUNT OF DAMAGES IS THE PLAINTIFF ENTITLED TO RECOVER FOR BREACH OF CONTRACT? IF YOU'VE ANSWERED THE **FIRST** ISSUE IN FAVOR OF THE PLAINTIFF, THEN EVEN WITHOUT PROOF OF ACTUAL DAMAGES, THE PLAINTIFFS WILL BE ENTITLED TO AT LEAST NOMINAL DAMAGES. . . .

[FIFTH ISSUE:]

THE **FIFTH** AND FINAL ISSUE, WHAT AMOUNT OF DAMAGES HAS THE PLAINTIFF SUSTAINED AS A PROXIMATE CAUSE OF THE DEFENDANTS' CONDUCT? IF YOU ANSWERED ISSUES **THREE** AND **FOUR** "YES" IN FAVOR OF THE PLAINTIFF, THE PLAINTIFF IS ENTITLED TO RECOVER AT LEAST NOMINAL DAMAGES WITHOUT PROOF OF ACTUAL DAMAGES. . . . SO, FINALLY, IF BY THE GREATER WEIGHT OF THE EVIDENCE THE PLAINTIFF [NAME] HAS PROVEN THE AMOUNT OF DAMAGES SHE SUSTAINED BY THE DEFENDANTS' CONDUCT SPECIFICALLY REFERRED TO IN ISSUES **THREE** AND **FOUR**, YOU WOULD WRITE THAT AMOUNT IN THE SPACE PROVIDED.

It is clear from a review of the record that the damages awarded pursuant to Issues two and five were separate amounts. Therefore, we conclude that the judgment was an accurate statement of the jury's verdict. However, as we have held above, plaintiffs are entitled to recover damages for breach of contract, but not for unfair or deceptive trade acts or practices. Thus, each plaintiff should be awarded only the damages specified by the jury in response to Issue two.

**[6]** Defendant also contends that the judgment was not properly entered. The jury returned a verdict in favor of plaintiffs on 12

November 1999. Plaintiffs then made a motion for treble damages and for attorneys' fees. The trial court directed plaintiffs to prepare a judgment expressing the jury's verdict, and indicated that it would reserve ruling on plaintiffs' post-trial motions until a later date. Plaintiffs prepared a judgment, which was signed by the trial court and filed with the clerk of court on 12 November 1999, the same afternoon that the jury's verdict was returned. Defendant had left the courtroom at some point before the trial court signed the judgment. Therefore, plaintiffs faxed a copy of the judgment to defense counsel's office; defendant received the copy on 17 November 1999, and gave notice of appeal to this Court the following day.

Defendant contends that because plaintiffs sent a copy of the judgment by fax, the judgment was not properly entered in compliance with N.C.R. Civ. P. 58 (2000). Rule 58 provides as follows:

> [A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court. The party designated by the judge or, if the judge does not otherwise designate, the party who prepares the judgment, shall serve a copy of the judgment upon all other parties within three days after the judgment is entered. Service and proof of service shall be in accordance with Rule 5. (emphasis added)

Judgment is entered when the three requirements stated in the first sentence of this rule are met. *State v. Coronel*, 145 N.C. App. 237, 550 S.E.2d 561 (2001); *Stevens v. Guzman*, 140 N.C. App. 780, 538 S.E.2d 590 (2000), *disc. review allowed*, 353 N.C. 397, 547 S.E.2d 437 (2001). The record shows that the judgment was reduced to writing, signed by the judge, and filed with the clerk on 12 November 1999. We find that judgment was entered on that date. The defendant does not dispute that these criteria for entry of judgment were met; rather, he contends that plaintiffs's use of a fax to provide defendant with a copy of the judgment renders it void and unenforceable. Defendant is correct that N.C.R. Civ. P. 5 does not authorize use of facsimile machines for service of documents. However, under Rule 58, the procedures for serving all parties with a copy of the judgment after its entry are separate and distinct from the criteria that govern entry of judgment, and the method of service of copies of the judgment is not a statutory criteria for entry of judgment. The cases cited by defendant for this proposition interpret an earlier version of Rule 58, which included different requirements.

Moreover, the purposes of the requirements of Rule 58 are to make the time of entry of judgment easily identifiable, and to give fair notice to all parties that judgment has been entered. *Stachlowski v. Stach*, 328 N.C. 276, 401 S.E.2d 638 (1991); *In re Estate of Peebles*, 118 N.C. App. 296, 454 S.E.2d 854 (1995). Defendant clearly had notice of the entry of judgment, as shown by his filing notice of appeal from the judgment. In addition, the trial judge on 13 January 2000 filed an amended judgment, whose entry defendant does not contest. The amended judgment awarded plaintiffs the same damages as the original judgment, and differed from it only in its denial of certain of plaintiffs' motions. Any procedural errors in plaintiffs' service of the first judgment upon defendant were rendered irrelevant by the entry of the later amended judgment. For these reasons, we hold that the judgment was properly entered pursuant to N.C.R. Civ. P. 58.

In conclusion, we affirm the trial court's order finding that the evidence did not establish that defendant had committed unfair or deceptive trade acts or practices, and its consequent denial of plaintiffs' motion for treble damages and attorneys' fees. Consistent with this ruling, we vacate the part of the judgment and the amended judgment awarding plaintiffs $22,000 each for unfair or deceptive trade acts or practices.

Affirmed in part; reversed and vacated in part.

Judges WYNN and CAMPBELL concur.