Nic TALANTIS, Plaintiff,

v.

PAUGH SURGICAL, INC., and Michael D. Paugh, Defendants.

No. 1:02CV00879.

United States District Court, M.D. North Carolina.

July 21, 2003.

Jonathan Mark Brooks, High Point, NC, for Nic Talantis, plaintiff.

David L. Woodard, Kacey C. Sewell, Poyner & Spruill, L.L.P., Raleigh, NC, for Paugh Surgical Incorporated, Michael D. Paugh, defendants.

## ORDER

DIXON, United States Magistrate Judge.

This matter is before the court on Plaintiff's motion to amend his Complaint [motion 22–1]. For the reasons discussed herein, the motion is granted.

On September 5, 2002, Plaintiff Nic Talantis filed a Complaint against Defendants Paugh Surgical, Inc. and Michael D. Paugh in Guilford County District Court. On October 11, 2002, Defendants removed the case to this court based on diversity jurisdiction. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441(a), (b). On November 12, 2002, Defendants filed their Answer and moved to dismiss Plaintiff's claim for a violation of the North Carolina Sales Representative Commissions Act. *See* N.C. GEN. STAT. §§ 66–190 to 66–199 (1989).

## FACTS

Plaintiff is a citizen of North Carolina. Defendant Paugh Surgical, Inc. ("PSI") is a corporation with its principal place of business in Virginia, and Defendant Michael D. Paugh is a citizen of Virginia. In October 2000, PSI hired Plaintiff to sell PSI's medical equipment throughout a defined territory. As a PSI salesman, Plaintiff's compensation was based wholly on his sales commissions. By letter dated March 19, 2002, Defendant Paugh informed Plaintiff that his employment with PSI would terminate on March 22, 2002, if Plaintiff did not resign sooner. In the letter Paugh also directed Plaintiff to return all PSI property in Plaintiff's possession. Plaintiff did not return the property.

Plaintiff subsequently filed a Complaint in state court against Defendants, seeking recovery of commissions allegedly owed on completed sales as well as expenses incurred by Plaintiff for sales that were pending when he was fired. Plaintiff also sought a declaratory judgment from the court as to what items of property Defendants are entitled to have returned to them. Defendants removed the case to this court, and they have counterclaimed for conversion and trespass to chattels for Plaintiff's failure to return PSI's property.

Plaintiff's Complaint was woefully inadequate in that, although Plaintiff alleged four separate "claims for relief," he failed to identify specific legal claims arising from the factual allegations. Because some of the language in the Complaint appeared to refer to a provision in the North Carolina Sales Representative Commissions Act ("NCSRCA"), Defendants surmised that Plaintiff was seeking recovery under that Act. Defendants filed a motion to dismiss the NCSRCA claim, arguing that Plaintiff failed to state a claim under the Act because the NCSRCA applies only to *non*-employee sales represen-

tatives and Plaintiff had specifically alleged in his Complaint that he had been an employee of Defendant Paugh Surgical, Inc. See FED. R. CIV. P. 12(b)(6). In his brief opposing the motion to dismiss, Plaintiff conceded that he failed to state a claim under the NCSRCA, but he argued that he was also seeking recovery under North Carolina's Wage and Hour Act. *See* N.C. GEN. STAT. §§ 95–25.1 to 95–25.25 (1979). On February 26, 2003, I entered a Recommendation which stated that, to the extent that Plaintiff was seeking recovery under the NCSRCA, that claim should be dismissed. Due to the vagueness of Plaintiff's Complaint regarding his specific legal claims, I recommended that Plaintiff be given the opportunity to amend his Complaint to clarify his remaining legal claims for the alleged unpaid commissions and expenses.

The parties did not file objections and the court subsequently adopted my Recommendation. By Order dated April 18, 2003, the court granted Defendants' motion to dismiss Plaintiff's NCSRCA claim. The Order further directed that "should Plaintiff propose to amend his pleading to articulate the precise legal claims under which he seeks to recover the commissions and expenses allegedly owed to him, a motion to amend and proposed amended pleadings must be filed no later than April 30, 2003." Plaintiff has now filed a timely motion to amend his complaint. Defendants do not oppose the motion.

*Amount–in–Controversy Requirement*

■ As an initial matter, I must first address a jurisdictional issue. Here, Plaintiff filed the Complaint in state court and Defendant removed on the basis of diversity jurisdiction. Although Plaintiff has not contested removal and the parties apparently concede jurisdiction, the court must nevertheless conduct its own inquiry to determine whether the jurisdictional requirements have been met. The case must be remanded if at any time before final judgment it appears that the district court lacks subject matter jurisdiction. *See Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *United States v. White,* 139 F.3d 998, 999–1000 (4th Cir.1998); 28 U.S.C. § 1447(c).

■ Removal based on diversity jurisdiction requires: (1) diversity of citizenship between the parties, and (2) an amount in controversy exceeding $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. For purposes of removal jurisdiction, a court must examine the circumstances in a case as of the time the case was filed in state court-that is, before the defendants filed their answer in federal court. *Wisconsin Dept. of Corrs. v. Schacht,* 524 U.S. 381, 390, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 291, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (stating that "the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove")). Thus, in determining whether the jurisdictional amount has been met, a federal court must consider the parties' citizenship and the amount in controversy as of the time of removal, and events occurring after removal that destroy diversity or reduce the amount in controversy will not divest the court of its jurisdiction. *St. Paul Mercury Indem. Co.,* 303 U.S. at 288–90, 58 S.Ct. 586; *see also Atari v. McNeal,* 159 F.Supp.2d 224, 225 (W.D.N.C.2000). "[I]f, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow." *St. Paul Mercury Indem. Co.,* 303 U.S. at 292, 58 S.Ct. 586. Finally, in removal cases it is the defendant's burden to prove that the case satisfies all of the

jurisdictional requirements for removal.[1] *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148 (4th Cir.1994); *Dash v. Firstplus Home Loan Trust 1996–2,* 248 F.Supp.2d 489, 496 (M.D.N.C.2003).

■■■ Here, the parties are clearly diverse, and the only remaining jurisdictional question is whether the amount-in-controversy requirement has been satisfied. This court must decide whether, at the time of removal, Plaintiff's recovery could exceed $75,000, exclusive of interest and costs. The Complaint states that Plaintiff seeks $66,555.33 for unpaid commissions, plus an unspecified amount for additional expenses incurred on sales that were pending when he was fired, plus treble damages, plus attorney's fees, and "[a]ll such relief, legal and equitable, to which Plaintiff is entitled." *See* Complaint ¶¶ 20, 25, 28; Prayer for Relief ¶¶ 2, 4, 6. The Complaint does not cite any specific North Carolina statute that would allow for recovery of either treble damages or attorney's fees. Because the Complaint did not point to statutory authority for treble damages or attorney's fees, and because the Complaint seeks an unspecified amount for expenses in addition to the amount requested for unpaid commissions, it is impossible to determine from merely examining the face of the complaint whether the amount in controversy exceeds $75,000. When a complaint is ambiguous as to the value of the action, "until jurisdiction be-

comes determinate, the court may consider any evidence of the amount in controversy." *Gwyn v. Wal–Mart Stores, Inc.,* 955 F.Supp. 44, 46 (M.D.N.C.1996); *see also Sun Printing & Publ'g Ass'n v. Edwards,* 194 U.S. 377, 382, 24 S.Ct. 696, 48 L.Ed. 1027 (1904). I will therefore consider the entire record in determining whether the amount in controversy exceeds $75,000.

■■■ Here, although Plaintiff's Complaint did not specifically cite the North Carolina Wage and Hour Act, Plaintiff has clearly indicated that he seeks recovery under that Act. Indeed, the allegations in the Complaint appear to state a claim under the Act. The North Carolina Wage and Hour Act applies to North Carolina employees and provides specific remedies for an employee who shows that his employer has failed to pay him earned wages.[2] *See* N.C. Gen. Stat. § 95–25.22(a1) & (d). The Act provides that, in addition to recovering unpaid wages from an employer, an employee may also recover liquidated damages up to the amount due for the unpaid wages. Under the Act, a court has discretion whether to award liquidated damages and how much it will award. The Act also provides for recovery of attorney's fees.[3]

■■■ Here, the Complaint specifically states that Plaintiff is claiming damages for unpaid commissions in the amount of

---

1. This circuit's court of appeals has not addressed the appropriate standard of proof in such situations, but this court has consistently required defendants to prove diversity jurisdiction by a "preponderance of the evidence." *Michael v. Bayer Corp.,* No. 1:01CV1106, 2003 WL 151850, at *3 (M.D.N.C. Jan.8, 2003) (citing *Turner v. CTS Con–Way Transp. Servs.,* No. 1:98CV00624, 1999 WL 1939243, at *1 (M.D.N.C. Apr.28, 1999) (citing precedent in other circuits and then adopting a preponderance of the evidence standard)); *see also Griffin v. Holmes,* 843 F.Supp. 81 (E.D.N.C.1993).

2. Although the Complaint did not state that Plaintiff was a North Carolina employee, Plaintiff has indicated that he is in fact employed in North Carolina, and he asserts this allegation in his proposed Amended Complaint.

3. Attorney's fees may be included in the damages calculation for purposes of diversity jurisdiction when a right to such fees is provided by statute. *Missouri State Life Ins. v. Jones,* 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933).

$66,555.33, plus additional expenses incurred for sales that were pending when he was fired, plus attorney's fees. The unspecified expenses plus attorney's fees, if tacked onto the requested $66,555.33 for unpaid commissions, could likely exceed $75,000. Even if not, however, a double liquidated damages award under the Wage and Hour Act could bring Plaintiff's recovery well over the jurisdictional amount. In other words, if Plaintiff proves a violation of the Act, he could potentially recover $133,110.66 (which equals the alleged commissions owed plus liquidated damages equal to the commissions owed), plus an unspecific monetary amount for expenses, plus attorney's fees. I find that the amount-in-controversy requirement is therefore satisfied.[4]

I now address Plaintiff's motion to amend his Complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Here, the court specifically stated in its earlier Order that Plaintiff would be given the chance to amend his Complaint to clarify his legal claims. Defendants do not oppose the motion. The motion to amend the Complaint is granted.

Based on the foregoing, Plaintiff's motion to amend his Complaint is **GRANTED**.

---

4. As for the request for treble damages, it is possible that Plaintiff seeks treble damages under North Carolina's Unfair and Deceptive Trade Practices Act. See N.C. GEN. STAT. § 75–1.1 (2001). The Unfair and Deceptive Trade Practices Act generally does not apply, however, to disputes arising out of the employer-employee relationship. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001); *see also Durling v. King*, 146 N.C.App. 483, 489, 554 S.E.2d 1, 5 (2001) (where a subcontracting sales representative brought an unfair and deceptive trade practices claim against a contracting sales representative for failing to pay commissions, holding that the conduct of withholding commissions does not violate the Act because the conduct of withhold commissions is not "in or affecting commerce"). Therefore, it does not appear that Plaintiff could possibly recover treble damages under North Carolina's Chapter 75, and I can discern no other state statute that would allow for treble damages recovery. As I have already discussed, however, I find that the jurisdictional amount is met even if Plaintiff could not recover treble damages. Finally, I note that the Recommendation dated February 26, 2003, incorrectly stated that the NCSRCA provides for recovery of treble damages. The NCSRCA in fact contains no provision. The mistake has now been corrected, and the corrected version is available electronically on Westlaw. *See Talantis v. Paugh Surgical, Inc.*, No. 1:02CV00879, 2003 WL 1906376 (M.D.N.C. Feb.26, 2003).