Fisher v. Commc'n Workers of Am., 2008 NCBC 18

STATE OF NORTH CAROLINA

COUNTY OF GASTON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 3154

JASON FISHER, BYRON ADAMS,
B.C. BARNES, CHERYL BARTLETT,
KATHY BEAM, CAROLYN BOGGS,
SUSETTE BRYANT, DANNY CASE,
GENE DRY, RICKY GRIFFIN,
WENDY HERNDON, EVERETT
JENKINS, SANDRA LANGSTON,
CYNTHIA STAFFORD, MARY
TAUTIN, and TIMOTHY THOMAS,

        Plaintiffs,

  v.

COMMUNICATION WORKERS OF
AMERICA, COMMUNICATION
WORKERS OF AMERICA, DISTRICT
3, and COMMUNICATION WORKERS
OF AMERICA LOCAL 3602,

        Defendants.

**ORDER & OPINION**

*Van Hoy, Reutlinger, Adams & Dunn by Philip M. Van Hoy and Stephen J. Dunn and National Right to Work Legal Defense Foundation by Matthew C. Muggeridge for Plaintiffs.*

*Brooks Law Offices by Joyce M. Brooks and Nakamura, Quinn, Walls, Weaver & Davies LLP by Robert M. Weaver for Defendants Communication Workers of America and Communication Workers of America, District 3.*

*Patterson Harkavy LLP by Ann Groninger for Defendant Communication Workers of America Local 3602.*

Diaz, Judge.

{1}    Before the Court are Defendants' Motions to Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("the Motions").

{2}    After considering the Amended Complaint, the Motions, the briefs of the parties, and the arguments of counsel, the Court **GRANTS** in part and **DENIES** in part Defendants' Motions.

## I.
## PROCEDURAL BACKGROUND

{3}    On 11 June 2008, Plaintiffs filed their Complaint in Gaston County Superior Court. Also on that date, Plaintiffs filed a Notice of Designation designating this case as mandatory complex business.

{4}    On 11 July 2008, Plaintiffs filed an Amended Complaint. Plaintiffs allege that Defendants (1) violated the North Carolina Identity Theft Protection Act (the "NCITPA"), N.C. Gen. Stat. § 75-62; (2) violated the Unfair and Deceptive Trade Practices Act (the "UDTPA"), N.C. Gen. Stat. § 75-1.1; and (3) invaded Plaintiffs' privacy by intruding upon their seclusion and private affairs.

{5}    On 11 August 2008, Defendants Communication Workers of America ("CWA") and Communication Workers of America, District 3 ("District 3") filed a Motion to Dismiss Plaintiffs' Amended Complaint and supporting brief.

{6}    Also on 11 August 2008, Defendant Communication Workers of America Local 3602 ("Local 3602") filed a Motion to Dismiss Plaintiffs' Amended Complaint. In its Motion to Dismiss, Defendant Local 3602 adopts and incorporates the supporting brief submitted by Defendants CWA and District 3.

{7}    Plaintiffs filed a response brief on 29 August 2008.

{8}    Defendants filed their reply briefs on 11 September 2008.

{9}    The Court heard oral argument on the Motions on 22 September 2008.

## II.
## THE FACTS
### A.
### THE PARTIES

{10}    Plaintiffs are individuals who live in various counties in North and South Carolina. (Am. Compl. ¶¶ 2—10.)

{11}   Defendant CWA is a labor union headquartered in Washington, D.C., which represents employees in several states, including North Carolina.  (Am. Compl. ¶ 11.)

{12}   Defendant District 3 is a labor union and regional affiliate of CWA.  (Am. Compl. ¶ 12.)

{13}   Defendant Local 3602 is a labor union and local affiliate of both CWA and District 3.  (Am. Compl. ¶ 13.)

B.

THE CLAIMS[1]

{14}   Plaintiffs are current and former employees of AT&T, Inc.  (Am. Compl. ¶ 17.)

{15}   Each of the Plaintiffs is, or previously was, represented by Defendants CWA and District 3, as well as various other local unions.  (Am. Compl. ¶ 18.)

{16}   Plaintiff Daniel Case ("Case") is employed at the AT&T facility in Burlington, North Carolina, which is known as the Longpine facility.  (Am. Compl. ¶ 20.)

{17}   The Longpine facility houses a bulletin board designated by AT&T for use by Defendants for communications with employees (the "Bulletin Board").  The Bulletin Board is located in a hallway that is accessible to the general public.  (Am. Compl. ¶ 21.)

{18}   Between 5 September 2007 and 7 November 2007, Case saw a three (3)-page typed notice posted on the Bulletin Board labeled "2007 Cancellations by Local" (the "Cancellation Notice").  The first two pages of the Cancellation Notice contained a spreadsheet with names, Social Security numbers, and other information about Case and thirty-two (32) other employees of AT&T.  The third page of the Cancellation Notice contained a printout of an email sent by Judy Brown on 5 September 2007, addressed to Daphne Council and Wallace Weaver, with a copy sent to Noah Savant.  (Am. Compl. ¶ 22.)

---

[1] The Court recites the relevant facts as set forth in Plaintiffs' Amended Complaint.

{19} Judy Brown and Daphne Council were employed by Defendant CWA on 5 September 2007. (Am. Compl. ¶¶ 23, 24.)

{20} Noah Savant and Wallace Weaver were employed by Defendant District 3 on 5 September 2007. (Am. Compl. ¶¶ 25, 26.)

{21} Judy Brown's email of 5 September 2007 contained a file attachment labeled "NC.xls." This email also included a request to "[p]lease forward this information to your affected locals." (Am. Compl. ¶¶ 27, 29.)

{22} According to Plaintiffs, Defendants' agents disseminated Plaintiffs' Social Security numbers by forwarding the "NC.xls" document by email and other means. (Am. Compl. ¶ 30.)

{23} Plaintiffs also allege that Defendants' agents posted Plaintiffs' Social Security numbers on the Bulletin Board. (Am. Compl. ¶ 31.)

III.

CONTENTIONS OF THE PARTIES

A.

NORTH CAROLINA IDENTITY THEFT PROTECTION ACT

{24} Defendants move to dismiss Plaintiffs' claims under the NCITPA on three grounds.

{25} First, Defendants contend Plaintiffs have failed to allege that the individuals allegedly in receipt of the "NC.xls" document were members of the general public or were not otherwise authorized to receive the document. (CWA and District 3 Mem. Supp. Mot. Dismiss 4.)

{26} Second, Defendants contend Plaintiffs have failed to allege that the general public accessed Plaintiffs' Social Security numbers from the Bulletin Board or that the posting of the Social Security numbers on the Bulletin Board was an effort to provide Plaintiffs' Social Security numbers to the general public or to facilitate identity theft. (CWA and District 3 Mem. Supp. Mot. Dismiss 4.)

{27} Third, Defendants assert that the NCITPA exempts from its reach the "collection, use, or release of a Social Security number . . . for internal verification or

administrative purposes." (CWA and District 3 Mem. Supp. Mot. Dismiss 5 (*citing* N.C. Gen. Stat. § 75-62(b)(2)).) Because the information posted on the Bulletin Board (including Plaintiffs' Social Security numbers) was posted for internal administrative purposes, Defendants contend Plaintiffs' claims fail as a matter of law. (CWA and District 3 Mem. Supp. Mot. Dismiss 4–5; Def. CWA's Reply Supp. Mot. Dismiss 2.)

{28} Plaintiffs respond that Defendants' actions in disseminating and posting Plaintiffs' Social Security numbers on a publicly accessible bulletin board effectively made that information available to the general public, thus constituting a violation of the NCITPA. (Am. Compl. ¶ 34; Pls.' Resp. Defs.' Mot. Dismiss 3.)

{29} Plaintiffs also dispute that the purported NCITPA exemption allowing release of Social Security numbers for internal verification or administrative purposes applies on the facts presented. In any event, Plaintiffs contend their Amended Complaint need not refute an affirmative defense to survive a Rule 12(b)(6) motion to dismiss. (Pls.' Resp. Defs.' Mot. Dismiss 5.)

B.

UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

{30} Defendants contend the UDTPA is not implicated here because none of the allegations contained in the Amended Complaint are "in or affecting commerce" and because no "trade practices" are involved. (CWA and District 3 Mem. Supp. Mot. Dismiss 6.)

{31} Additionally, Defendants contend the legislative intent of the General Assembly would be frustrated by recognizing Plaintiffs' cause of action under the UDTPA. (CWA and District 3 Mem. Supp. Mot. Dismiss 5–6; Def. CWA's Reply Supp. Mot. Dismiss 2–3.)

{32} Plaintiffs respond by pointing the Court to the plain language of the NCITPA, which states expressly that "[a] violation of [section 75-62 of the North Carolina General Statutes] is a violation of [the UDTPA]." N.C. Gen. Stat. § 75-62(d) (2007). (Pls.' Resp. Defs.' Mot. Dismiss 6.)

## C.

## INVASION OF PRIVACY

{33} Defendants contend Plaintiffs have failed to articulate how their allegations constitute evidence that Defendants intruded upon Plaintiffs' personal affairs or private concerns. (CWA and District 3 Mem. Supp. Mot. Dismiss 7.)

{34} Specifically, Defendants contend Plaintiffs failed to allege that those agents of the Defendants who purportedly posted the "NC.xls" document on the Bulletin Board were not authorized to view or access Plaintiffs' Social Security numbers. (CWA and District 3 Mem. Supp. Mot. Dismiss 7–8.)

{35} Additionally, Defendants contend Plaintiffs make no allegation that Defendants or their agents intentionally pried into Plaintiffs' confidential personal records. (CWA and District 3 Mem. Supp. Mot. Dismiss 8.)

{36} Finally, Defendants assert that North Carolina does not recognize a cause of action for invasion of privacy by public disclosure of private facts. (CWA and District 3 Mem. Supp. Mot. Dismiss 8.)

{37} According to Plaintiffs, Defendants' actions constitute an invasion of privacy on two theories: (1) intrusion on their seclusion and private affairs; and (2) public disclosure of private facts. (Am. Compl. ¶ 41; Pls.' Resp. Defs.' Mot. Dismiss 8.)

{38} With respect to the first theory, Plaintiffs contend that Defendants' agents intentionally obtained private information about Plaintiffs and disseminated it to unauthorized individuals and that they used their authority to allow unauthorized persons to view the information. (Pls.' Resp. Defs.' Mot. Dismiss 9.)

{39} Also with respect to the first theory, Plaintiffs contend the public disclosure of Plaintiffs' Social Security numbers by Defendants is analogous to the unauthorized opening and perusal of one's mail, such that it would be highly offensive to a reasonable person. (Pls.' Resp. Defs.' Mot. Dismiss 9.)

{40} Alternatively, Plaintiffs contend the passage of the NCITPA and the particular facts of this case justify the recognition in North Carolina of the "public

disclosure of private facts" branch of the tort of invasion of privacy. (Pls.' Resp. Defs.' Mot. Dismiss 10–11.)

IV.

PRINCIPLES OF LAW

A.

RULE 12(b)(6) MOTION TO DISMISS

{41}  The essential question on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" *Craven v. Cope*, ___ N.C. App. ___, ___, 656 S.E.2d 729, 731–32 (2008) (*quoting Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480, 593 S.E.2d 595, 598 (2004)).

{42}  On a motion to dismiss, the complaint's material factual allegations are taken as true. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (*citing Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{43}  "[A] complaint is deemed sufficient to withstand a motion to dismiss under Rule 12(b)(6) where no 'insurmountable bar' to recovery appears on the face of the complaint and the complaint's allegations give adequate notice of the nature and extent of the claim." *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987) (*quoting Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)).

{44}  "'The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.'" *Craven*, ___ N.C. App. at ___, 656 S.E.2d at 731–32 (italicized in original) (*quoting Hunter*, 162 N.C. App. at 480, 593 S.E.2d at 598).

{45}  Nevertheless,

> [d]ismissal under Rule 12(b)(6) is proper when one or more of the following three conditions is satisfied: (1) when on its face the

> complaint reveals no law supports plaintiff's claim; (2) when on its face the complaint reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Johnson*, 86 N.C. App. at 4, 356 S.E.2d at 380 (*citing Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

## B.

## NORTH CAROLINA IDENTITY THEFT PROTECTION ACT

{46} The NCITPA states, in pertinent part, "a business may not . . . [i]ntentionally communicate or otherwise make available to the general public an individual's social security number." N.C. Gen. Stat. § 75-62(a)(1) (2007).

{47} For purposes of the NCITPA, the term "[b]usiness" is defined as "[a] sole proprietorship, partnership, corporation, association, or other group, however organized and whether or not organized to operate at a profit." N.C. Gen. Stat. § 75-61(1) (2007).

{48} A business does not violate the NCITPA when the alleged activity relates to "the collection, use, or release of a social security number for internal verification or administrative purposes." N.C. Gen. Stat. § 75-62(b)(2) (2007).

## C.

## UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

{49} The NCITPA expressly provides, "[a] violation of [section 75-62 of the North Carolina General Statutes] is a violation of [section] 75-1.1 [of the UDTPA]." N.C. Gen. Stat. § 75-62(d) (2007).

{50} Thus, if Plaintiffs state valid claims under the NCITPA, they also state valid claims under the UDTPA.

## D.

## INVASION OF PRIVACY

{51} North Carolina courts have recognized the tort of invasion of privacy by way of intrusion upon one's seclusion. *See, e.g., Toomer v. Garrett*, 155 N.C. App. 462, 479, 574 S.E.2d 76, 90 (2002).

{52}  "'[O]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Miller v. Brooks*, 123 N.C. App. 20, 26, 472 S.E.2d 350, 354 (1996) (*quoting Smith v. Jack Eckerd Corp.*, 101 N.C. App. 566, 568, 400 S.E.2d 99, 100 (1991)).

{53}  "Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 29, 588 S.E.2d 20, 27 (2003) (*citing Burgess v. Busby*, 142 N.C. App. 393, 405, 544 S.E.2d 4, 11 (2001)).

{54}  North Carolina courts have not recognized a cause of action for invasion of privacy by public disclosure of private facts. *See, e.g., Hall v. Post*, 323 N.C. 259, 265–70, 372 S.E.2d 711, 714–17 (1988) (holding that "claims for invasions of privacy by publication of *true* but 'private' facts are not cognizable at law in this State" and reversing the decision of the Court of Appeals that held to the contrary).

V.

ANALYSIS

A.

NORTH CAROLINA IDENTITY THEFT PROTECTION ACT

{55}  Plaintiffs must allege three elements to state claims for violation of section 75-62(a)(1) of the NCITPA: (1) Each Defendant must be a "business"; (2) Defendants must communicate or otherwise make available to the general public Plaintiffs' Social Security numbers; and (3) Defendants must act with intent. *See* N.C. Gen. Stat. § 75-62(a)(1) (2007).

{56}  Plaintiffs' Amended Complaint satisfies all three elements.

{57}  First, Plaintiffs allege Defendants are labor unions. (Am. Compl. ¶¶ 11–13.) As such, it appears Defendants are "businesses" within the meaning of section 75-61(1), which defines that term to include "association[s], or other group[s],

however organized and whether or not organized to operate at a profit." N.C. Gen. Stat. § 75-61(1) (2007).

{58} Second, Plaintiffs allege Defendants disseminated Plaintiffs' Social Security numbers and then posted them on a bulletin board, which was accessible to the general public. (Am. Compl. ¶¶ 21–22, 30–31.)

{59} As to this element, the NCITPA requires only that Defendants make Plaintiffs' Social Security numbers available to the general public. It does not require that the general public actually see the Social Security numbers. *See* N.C. Gen. Stat. § 75-62(a)(1).

{60} Moreover, contrary to Defendants' contention, the NCITPA also does not require that the communication of Social Security numbers be done for the purpose of providing them to the general public or facilitating identity theft. *See id.*

{61} Third, Plaintiffs allege that Defendants' conduct was intentional, willful, and malicious. (Am. Compl. ¶ 35.)

{62} Furthermore, while it is true that a complaint should be dismissed if it discloses an unconditional affirmative defense that defeats the claims asserted, *see Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970), Defendants' assertion that the Bulletin Board was used for internal administrative purposes (and, therefore, falls outside the ambit of the NCITPA) presents a factual dispute as to an affirmative defense, which the Court may not resolve at this stage of the case.

{63} Taking the Amended Complaint in the light most favorable to Plaintiffs, they have stated valid claims under the NCITPA.

{64} Accordingly, the Court **DENIES** Defendants' Motions as to these claims.

B.

UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

{65} As Defendants correctly point out, "'the fundamental purpose of [the UDTPA] is to protect the consuming public,'" *Durling v. King*, 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001) (*quoting Prince v. Wright*, 141 N.C. App. 262, 268–69, 541 S.E.2d 191, 197 (2000)), and claims under the UDTPA typically involve buyer

and seller, *id.* (*citing Holley v. Coggin Pontiac*, 43 N.C. App. 229, 259 S.E.2d 1 (1979)).

{66} As a general matter, "employer-employee relationships do not fall within the intended scope of [the UDTPA]." *Liggett Group, Inc. v. Sunas*, 113 N.C. App. 19, 31, 437 S.E.2d 674, 682 (1993) (*citing Am. Marble Corp. v. Crawford*, 84 N.C. App. 86, 88, 351 S.E.2d 848, 849–50 (1987)); *see also Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–20 (1982).

{67} Defendants, however, have not brought to the Court's attention any cases extending this general exemption to the employee-labor representative relationship, and the Court is aware of no such case.

{68} Regardless, the General Assembly's express and unambiguous declaration, that "[a] violation of [section 75-62 of the NCIPTA] is a violation of [the UDTPA]," necessarily defeats Defendants' motion to dismiss this claim. *See, e.g.*, *In re A.R.G.*, 361 N.C. 392, 396, 646 S.E.2d 349, 351 (2007) ("[W]hen a statute is clear and unambiguous, [courts] will give effect to its plain meaning and will not entertain a contextual determination of legislative intent." (*citing State v. Bryant*, 361 N.C. 100, 102, 637 S.E.2d 532, 534 (2006))).

{69} Because Plaintiffs have alleged valid claims under the NCITPA, they also have alleged valid claims under the UDTPA.

{70} Accordingly, the Court **DENIES** Defendants' Motions as to these claims.

C.

INVASION OF PRIVACY

{71} Plaintiffs assert two grounds for their invasion of privacy claims.

{72} First, Plaintiffs allege their Amended Complaint states valid claims for invasion of privacy by intrusion into Plaintiffs' seclusion or solitude in that Defendants intentionally obtained their Social Security numbers and allowed unauthorized persons to access these numbers.

{73} Relying primarily on *Toomer v. Garrett*, 155 N.C. App. 462, 574 S.E.2d 76 (2002), Plaintiffs assert that "the public disclosure of the Plaintiffs' Social Security numbers can be analogized to the 'unauthorized opening and perusal of one's mail'

and 'would be highly offensive to a reasonable person.'" (Pls.' Resp. Defs.' Mot. Dismiss 9 (*quoting Toomer*, 155 N.C. App. at 480, 574 S.E.2d at 90).)

{74} The Court concludes, however, that this is not the type of "intentional intrusion, 'physically or otherwise,'" necessary to state a claim for invasion of privacy by intrusion into seclusion. *Miller*, 123 N.C. App. at 26, 472 S.E.2d at 354; *see Broughton*, 161 N.C. App. at 29, 588 S.E.2d at 27 ("Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." (*citing Burgess*, 142 N.C. App. at 405–06, 544 S.E.2d at 10–11 (2001))).

{75} *Toomer* is distinguishable. In *Toomer*, the plaintiff alleged that the defendants "intentionally used their authority to allow unauthorized persons to examine plaintiff's [state personnel] file." *Toomer*, 155 N.C. App. at 480, 574 S.E.2d at 90. This examination of the plaintiff's personnel file by unauthorized persons constitutes the "intentional intrusion" necessary to state a claim for invasion of privacy by intrusion, which is absent from Plaintiffs' pleading in the present case.

{76} Alternatively, Plaintiffs assert that "the passage of the [NC]ITPA and the particular facts of this case justify recognition of the 'public disclosure of private facts' branch of the invasion of privacy tort." (Pls.' Resp. Defs.' Mot. Dismiss 8.)

{77} In support of this argument, Plaintiffs contend:

> If the court holds that the Plaintiffs' claim is necessarily a "public disclosure" claim and dismisses it on that basis, the Plaintiffs will slip through the crack created by *Hall v. Post*. Plaintiffs would be stuck without an invasion of privacy claim but also without the [intentional infliction of emotional distress] claim envisioned by *Hall* to be "almost inevitably" available.

(Pls.' Resp. Defs.' Mot. Dismiss 11.)

{78} Based largely on First Amendment principles, the Supreme Court of North Carolina has held that "claims for invasions of privacy by publication of *true* but 'private' facts are not cognizable at law in this State." *Hall*, 323 N.C. at 265, 372 S.E.2d at 714 (overturning a Court of Appeals decision that adopted the intrusion branch of the tort of invasion of privacy).

{79} If, as Plaintiffs contend, there exists a "crack" in North Carolina's invasion of privacy jurisprudence, this Court has no authority to seal it. That power instead rests with the North Carolina Supreme Court. *See e.g.*, *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992) ("[The Court of Appeals] has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow [its] decisions 'until otherwise ordered by the Supreme Court.' . . . It necessarily follows that the trial court is bound by this same principle as well as the doctrine of *stare decisis*." (*quoting Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985))), *rev'd on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993).

{80} Accordingly, the Court **GRANTS** Defendants' Motions as to these claims.

VI.

CONCLUSION

{81} The Court **GRANTS** Defendants' Motions as to Plaintiffs' claims for invasion of privacy. Those claims are dismissed with prejudice.

{82} In all other respects, the Court **DENIES** the Motions.

This the 30th day of October, 2008.