Guilford Cnty. e*x rel.* Thigpen v. Lender Processing Servs., Inc., 2013 NCBC 30.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 4531

GUILFORD COUNTY, ex rel. JEFF L.　　)
THIGPEN, GUILFORD COUNTY　　　　 )
REGISTER OF DEEDS,　　　　　　　　 )
　　　　　　　　　 Plaintiff　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　 v.　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
LENDER PROCESSING SERVICES, INC., )
et al.,　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　 Defendants　　　　 )

**OPINION AND ORDER
ON MOTION TO DISMISS**

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon Defendants' Motion to Dismiss ("Motion"),[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the Motion, the arguments and briefs in support of and in opposition to the Motion, submissions of counsel and appropriate matters of record, CONCLUDES that the Motion should be GRANTED, for the reasons stated herein.

---

[1] Six different motions to dismiss have been filed with this court on behalf of various Defendants.  Since filing the motions to dismiss, all twenty-nine Defendants joined together for the purposes of arguing in support of dismissal of the present action pursuant to Rules 12(b)(1) and 12(b)(6).  Due to this commonality, the court will refer to all of the motions to dismiss collectively as the "Motion."  Further, the court will refer to all the twenty-nine named Defendants collectively."

*Guilford County Attorney's Office by J. Mark Payne, Esq. and Matt Turcola, Esq. for Plaintiff.*

*Talcott Franklin P.C. by Talcott Franklin, Esq., Shannon E. Brown, Esq. and Andrew Shore, Esq. for Plaintiff.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP by Reid L. Phillips, Esq., Jim W. Phillips, Jr., Esq. and D.J. O'Brien, III, Esq. and Berger Singerman LLP by Mitchell W. Berger, Esq. and Fred O. Goldberg, Esq. for Defendants Lender Processing Services, Inc., DocX, LLC and LPS Default Solutions, Inc.*

*McGuireWoods LLP by Jennifer L. King, Esq., William C. Mayberry, Esq., Jonathan A. Vogel, Esq. and Jason D. Evans, Esq. for Defendants Bank of America, N.A., EquiCredit Corporation of America, Nationscredit Financial Services Corp. and First Franklin Financial Corp.*

*Womble Carlyle Sandridge & Rice, PLLC by Jim D. Cooley, Esq. and Jackson R. Price, Esq. and Goodwin Procter, LLP by Joseph F. Yenouskas, Esq. and Thomas M. Hefferon, Esq. for Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and MorEquity, Inc.*

*Nelson Mullins Riley & Scarborough, LLP by Donald R. Pocock, Esq. and Debevoise & Plimpton, LLP by Mary Beth Hogan, Esq. for Defendants JPMorgan Chase Bank, N.A., Chase Home Finance LLC and EMC Mortgage Corporation.*

*The Bussian Law Firm, PLLC by John A. Bussian, Esq. and Morgan Lewis & Bockius, LLP by Robert M. Borchin, Esq. for Defendants MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc.*

*Troutman Sanders LLP by D. Kyle Deak, Esq. and Mary C. Zinser, Esq. and S. Mohsin Reza, Esq. for Defendant Capital One, N.A.*

*Hunton & Williams, LLP by George P. Sibley, III, Esq., Mark B. Bierbower, Esq. and Brent A. Rosser, Esq. for Defendant Navy Federal Credit Union.*

*Alexander Ricks, PLLC by Mary K. Mandeville, Esq. and Mayer Brown, LLP by Lucia Nale, Esq. and Thomas V. Panoff, Esq. for Defendant Citi Residential Lending, Inc.*

*Ellis & Winters, LLP by Thomas H. Segars, Esq. and C. Scott Meyers, Esq. and Reed Smith, LLP by Henry F. Reichner, Esq. for Defendant U.S. Bank National Association.*

*Dykema Gossett, PLLC by Donald Lampe, Esq., Richard Gottlieb, Esq. and Dawn Williams, Esq. for Defendants Sand Canyon Corporation f/k/a Option One*

*Mortgage Corporation, USAA Federal Savings Bank and Mortgage Access Corporation d/b/a Weichert Financial Services.*

*Higgins Benjamin Eagles & Adams, PLLC by Jonathan Wall, Esq. for Defendants MERSCORP Holdings, Inc. and Mortgage Electronic Registration Systems, Inc.*

*Jordan Price Wall Gray Jones & Carlton, PLLC by Paul T. Flick, Esq. and Lori P. Jones, Esq. for Defendant Green Tree Servicing, LLC.*

*Tuggle Duggins & Mescha, P.A. by Jeffrey Southlerland, Esq. and McGlinchey Stafford, PLLC by Gerard E. Wimberly, Esq., David R. Dugas, Esq. and Dylan M. Tuggle, Esq. for Defendant Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc.*

*Rogers, Townsend & Thomas, P.C. by Matthew T. McKee, Esq., Stephen C. Lenker, Esq. and John J. Hearn, Esq. for Defendants The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by Brian M. Freedman, Esq., Margaret S. Scholz, Esq. and Kevin S. Joyner, Esq. and Buchalter Nemer by Kelly R. Aman, Esq. for Defendants Ameriquest Mortgage Company and Argent Mortgage Company, LLC.*

Jolly, Judge.

I.

FACTUAL HISTORY

[1]    This matter arises out of Defendants' coordinated efforts to bundle and package mortgage loans into investment vehicles known as mortgage-backed securities.[2] The inherent complexity and risk of mortgage-backed securities has been well-publicized in recent years. Moreover, the historical economic turbulence caused by these investment vehicles is now widely understood. These considerations, however, are not directly before the court. At its core, the present action concerns two attendant aspects of the process of creating and maintaining mortgage-backed securities.

---

[2] Compl. ¶ 2.

A.

"MERS"

[2]     The first of these is the assignment of mortgages and deeds of trust to a private registry known as the Mortgage Electronic Registration System, Inc. ("MERS").[3] MERS is, in function, an electronic registry system that tracks its members' ownership and servicing rights in residential mortgage loans.[4]  It is owned and maintained by stakeholders in the mortgage industry, all of whom are apparently involved to some extent in the creation and maintenance of mortgage-backed securities.[5]

[3]     It appears that MERS exists to facilitate the creation and maintenance of mortgage-backed securities.  The creation of mortgage-backed securities requires the acquisition and repackaging of groups of mortgages.[6]  The conversion of groups of mortgages into marketable securities requires that the beneficial interest in a mortgage, along with servicing rights, be rapidly transferred through multiple parties.[7]  Put simply, underlying mortgages[8] must be assigned through a chain of parties ultimately to become securitized.

[4]     To facilitate this process, lenders often designate MERS as the mortgagee of record "for the narrow purpose of being named in the public records as such."[9] MERS does not purport actually to own a beneficial interest in a particular mortgage. Following the designation of MERS as the mortgagee of record, subsequent assignments between MERS members of the beneficial interest in the mortgage loan or

---

[3] *Id.*
[4] *Id.* ¶ 10.
[5] *Id.*
[6] *Id.* ¶ 53.
[7] *Id.* ¶ 54.
[8] The distinctions between mortgages and deeds of trust are not relevant to the process of creating mortgage-backed securities.
[9] *Id.* ¶ 67.

the servicing rights are not recorded in public filings because MERS claims, for purposes of recorded title, to remain the mortgagee of record.[10]  Thus, MERS members make multiple transfers of mortgages among themselves without filing each assignment in the public record and paying related fees.

B.

"<u>Robo-Signing</u>"

[5]     The second of these attendant aspects is the process known as "robo-signing."  Robo-signing refers to the practice of "signing mortgage assignments, satisfactions and other mortgage-related documents in assembly-line fashion, often with a name other than the affiant's own, and swearing to personal knowledge of facts of which the affiant in truth has no knowledge."[11]  The practice of robo-signing gained a foothold in the mortgage industry due to the immense volume of mortgage documents and transactions involved in the creation and maintenance of mortgage-backed securities.  It apparently is uncontested by Defendants that this practice occurred and that as a result of robo-signing, "falsified, forged, and/or fraudulently executed mortgage documents"[12] were filed both with Plaintiff and with similar registry offices across the country.

II.

<u>PROCEDURAL HISTORY</u>

[6]     On March 13, 2012, Jeff L. Thigpen, the Register of Deeds of Guilford County, acting on behalf of Guilford County, filed this civil action.

---

[10] *Id.* ¶¶ 67-68.
[11] *Id.* ¶ 3.
[12] *Id.*

[7]     Included in the Complaint is a Motion for Appointment of Special Master and for Injunctive Relief.  Plaintiff brings claims ("Claim(s)") against Defendants for (a) Violations of G.S. 45-36.9 – First Claim for Relief, (b) Unfair and Deceptive Trade Practices – Second Claim for Relief and (c) Unjust Enrichment – Third Claim for Relief.

[8]     Defendants' Motions to Dismiss, as well as the briefs in support and opposition thereof, were filed between May and August of 2012.

[9]     On October 16, 2012, the court held a hearing on the Motion.  The Motion has been fully briefed and argued and is ripe for determination.

III.

DISCUSSION

[10]    The bulk of the Complaint is aimed at describing: (a) the role each of the Defendants played in the process of creating mortgage-backed securities, (b) the process by which a mortgage is securitized, (c) the historical and modern role of the Register of Deeds, (d) the operation of MERS, (e) the practice of robo-signing, (f) criminal and regulatory actions brought against various Defendants related to the creation of mortgage-backed securities and the practice of robo-signing and (g) specific examples of robo-signing on the part of employees of various Defendants.

[11]    The Complaint goes on to describe the injuries allegedly suffered by Plaintiff, Guilford County and citizens of Guilford County as a result of the Defendants' actions.  As alleged by Plaintiff, these injuries include:

    (a)     Legal uncertainty concerning title;

    (b)     Difficulty or inability to discover and remedy title defects;

    (c)     The loss of homes due to illegal foreclosures;

(d)     Difficulty or inability to buy and sell property;

(e)     Decreases in real estate values;

(f)     Decreases in real estate investments;

(g)     The inability to put property to its highest and best use;

(h)     Reductions in tax collections to the County's Treasury and the concomitant reduction in services to support the public welfare;

(i)     Decreases in employment, social stability, and quality of life; and

(j)     The cost of identifying and repairing the issues identified in the Complaint.[13]

[12]     Plaintiff argues that it should be allowed to pursue the rights of Guilford County citizens in this matter because individual citizens would be ill equipped to address such a wide-spread scheme.[14]

[13]     In addition, Plaintiff alleges harms specific to itself including difficulty identifying ownership of particular parcels of land, following chains of title within the Plaintiff's records and providing public access to land records.[15]  Plaintiff alleges that the cost to identify and address the fraudulent documents currently in its records would far exceed Plaintiff's operating budget.[16]

[14]     The Motion seeks dismissal of Plaintiff's Claims pursuant to Rules 12(b)(1) and 12(b)(6).

---

[13] *Id.* ¶ 115.
[14] *Id.* ¶ 118.
[15] *Id.* ¶ 116.
[16] *Id.*

A.

Rule 12(b)(1)

[15]    Dismissal of an action pursuant to Rule 12(b)(1) is appropriate when the court lacks subject-matter jurisdiction.  Defendants assert that this court lacks subject-matter jurisdiction over Plaintiff's Claims because Plaintiff does not have standing to bring the Claims.

[16]    In order to have standing to bring a claim, a plaintiff must establish that (a) the plaintiff suffered an 'injury in fact,' "which is an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (b) the injury is fairly traceable to the challenged action of the defendant; and (c) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114 (2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotations omitted).  "Standing most often turns on whether the party has alleged 'injury in fact' in light of the applicable statutes or caselaw." *Id.*  The plaintiff has the burden of proving the elements of standing, and must establish standing separately for each form of relief sought.  *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.s (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

[17]    Standing to sue "refers to w]ether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter. *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972)).  "Standing is a jurisdictional issue[,] . . . [and] does not generally concern the ultimate merits of a lawsuit." *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 140 (2001) (citing *Sierra Club*, 405

U.S. at 804). "A party has standing to initiate a lawsuit if he is a real party in interest," meaning the party "is one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question." *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 823-24 (2005) (citing *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337 (2000)).

## B.

### Rule 12(b)(6)

[18] The Motion also seeks dismissal of Plaintiff's Claims pursuant to Rule 12(b)(6). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). The court notes that in ruling upon such a motion, "the complaint is to be liberally construed, and the trial court should not dismiss the complaint 'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Meyer v. Walls*, 347 N.C. 97, 111-12 (1997) (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340 (1987)).

## C.

### First Claim for Relief – Violations of G.S. 45-36.9

[19] Plaintiff's First Claim for Relief alleges violations of G.S. 45-36.9.

[20] G.S. 45-36.9(a) requires secured creditors to "submit for recording a satisfaction of a security instrument within 30 days after the creditor receives full

payment or performance of the secured obligation." Subsection (b) makes a secured creditor "liable to the landowner for any actual damages caused by the failure [to file a satisfaction], but not punitive damages." Subsection (c) adds that the secured creditor may also be "liable to the landowner" for additional damages, including punitive damages, if the landowner demands the creditor to record the satisfaction and the creditor fails to do so timely. A "landowner," for purposes of G.S. 45-36.9, has been defined as "[a] person that, before foreclosure, has the right of redemption in the real property described in a security instrument . . . [t]he term does not include a person that holds only a lien on the real property or the trustee under a deed of trust." G.S. 45-36.4(7).

[21]    The Complaint alleges that "Defendants have filed numerous fraudulent and invalid satisfactions with the Register of Deeds," and claims that "[t]hese invalid satisfactions violate G.S. 45-36.9."[17] In addition, Plaintiff alleges that "numerous purported satisfactions filed by Defendants were filed more than 30 days after the creditors received full payment," and that this also violates G.S. 45-36.9.[18]

[22]    G.S. 45-36.9 makes secured creditors liable to "landowners." The General Assembly therefore has given the right to sue for violations under the statute to "landowners" of the affected real property. The Guilford County Register of Deeds is not a "landowner" as defined in the statute, and therefore, it may not bring a cause of action under G.S. 45-36.9. Consequently, the court concludes that Plaintiff does not have standing to sue Defendants under G.S. 45-36.9.

---

[17] *Id.* ¶ 128.
[18] *Id.* ¶ 129.

[23]     Plaintiff maintains that even though it is not a "landowner," it still can bring an action "on behalf of the Guilford County citizens who are landowners" under *Kowalski v. Tesmer*, 543 U.S. 125 (2004).[19]  To assert third-party standing, a plaintiff first must demonstrate that it has standing in its own right and it then must also show that it has a sufficiently "close" relationship with the third party whose rights it seeks to assert and that there exists some hindrance to that third party's ability to pursue their own rights.  *See Kowalski; Powers v. Ohio*, 499 U.S. 400 (1991).

[24]     Here, Plaintiff's lack of standing in its own right to assert claims under G.S. 45-36.9 is fatal to its ability to assert the rights of others under the same statute. Further, the purpose of the statute is to provide landowners with a private right of action against secured creditors who do not timely file a satisfaction, and Plaintiff has not adequately demonstrated any hindrance to the ability of Guilford County landowners to pursue their own rights under G.S. 45-36.9.

[25]     Accordingly, Defendants' Motion as to Plaintiff's Claim for violations of G.S. 45-36.9 should be GRANTED.

D.

Second Claim for Relief – Violations of G.S. 75.1-1 ("Chapter 75")

[26]     Plaintiff's Second Claim for Relief alleges that Defendants' actions "constitute unfair and/or deceptive acts or practices under N.C. Gen. Stat. § 75-1.1"[20] ("Chapter 75 Claim").  Plaintiff maintains that "Defendants unfairly and deceptively utilized MERS to avoid accurately recording property interests, transfers, and satisfactions and to prevent landowners and the public from accessing property records.

---

[19] Resp. & Mem. Opp'n Mot. Dismiss 31.
[20] Compl. ¶ 131.

Defendants also unfairly and deceptively created false and inaccurate mortgage documents and filed those documents with the Register of Deeds."[21]  Plaintiff asserts that, as a "result of Defendants' unfair and deceptive conduct, Guilford County, the Register of Deeds, and the public have been harmed and damaged."[22]

[27]　To state a claim for unfair and deceptive trade practices under G.S. 75-1.1 and G.S. 75-16.1, a plaintiff must show that (a) the defendant committed an unfair or deceptive act or practice, (b) the act or practice in question was in or affecting commerce and (c) it proximately caused injury to the plaintiff.  *Dalton v. Camp*, 353 N.C. 647, 656 (2001).  In enacting G.S. 75-16, the General Assembly "intended to establish an effective private cause of action for aggrieved consumers in this State."  *Marshall v. Miller*, 302 N.C. 539, 543 (1981).  It was intended to provide a civil means to maintain ethical standards of dealings between persons and/or entities engaged in business and the consuming public in this State, and it applies to dealings between buyers and sellers in commerce.  *United Virginia Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 319-20 (1986).  In considering G.S. 75-1.1's requirement that the acts complained of must be "in or affecting commerce," North Carolina courts have determined that, "[c]ommerce in its broadest sense comprehends intercourse for the purpose of trade in any form."  *Prince v. Wright*, 141 N.C. App. 262, 268 (2000) (quoting *J.M. Westall & Co. v. Windswept View of Asheville, Inc.*, 97 N.C. App. 71, 75 (1990)) (internal quotations omitted).

[28]　For purposes of the Motion, the court accepts as true that the practice of robo-signing may be considered a deceptive trade practice or act under North Carolina law.  In addition, there is at least a colorable argument that Defendants' utilization of

---

[21] *Id.*
[22] *Id.* ¶ 132.

MERS as described in the Complaint also constitutes an unfair or deceptive trade practice. However, the court concludes that Plaintiff's Second Claim for Relief must fail because Defendants' actions, as they concern the Plaintiff, are not in or affecting commerce.

[29]    In asserting its Chapter 75 Claim, Plaintiff may only complain of those actions of Defendants that were directed toward Plaintiff or to which Plaintiff was a party. As disclosed in the Complaint, Plaintiff had no interaction with Defendants until the time at which Defendants filed mortgage-related documents with Plaintiff's office. The court is persuaded that the administrative interactions between Defendants and the Plaintiff Register of Deeds do not constitute "intercourse for the purpose of trade" and therefore are not appropriately considered "in or affecting commerce" as contemplated by Chapter 75. In the context of receiving public filings, the Register of Deeds is not a consumer, buyer or seller of mortgage-related documents. Further, the process of receiving and filing mortgage-related documents, standing alone, does not constitute a business transaction so as to give rise to liability under Chapter 75. In receiving public filings the Register of Deeds is not acting as a market participant, but is instead fulfilling a statutorily-defined administrative role and acting as a governmental body. Thus, because there is no allegation of commercial activity between Plaintiff and Defendants, the Chapter 75 Claim should fail as a matter of law.

[30]    In addition, Plaintiff asserts its Chapter 75 Claim on behalf of the public. Plaintiff may not do so, as Plaintiff cannot satisfy the required elements for asserting third-party standing. The court is not persuaded that there is a sufficient hindrance to the ability of the public to pursue its own Chapter 75 claims. Further, Plaintiff does not

stand in a sufficiently close relationship to the citizens of Guilford County. The Complaint does not describe any relationship between Plaintiff and the public other than the administrative relationship between a citizen and a county recording office. This relationship is insufficient to bestow third-party standing upon Plaintiff.

[31]    Accordingly, Defendants' Motion as to Plaintiff's Chapter 75 Claim should be GRANTED.

E.

Unjust Enrichment

[32]    Plaintiff's Third Claim for Relief asserts that "Defendants have been unjustly enriched at the expense of Plaintiff in the amount of $10,000 by, among other things, avoiding filing fees for properly filed, accurate, and/or corrected mortgage documents."[23]  In response, Defendants argue that Plaintiff failed to plead the necessary elements to maintain an unjust enrichment claim for relief.[24]

[33]    "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). The benefit must not be gratuitous, it must be measurable and it must not have been conferred officiously, that is it must not have been conferred by an interference in the affairs of the other party in a manner not justified under the circumstances. *See id.* Furthermore, "the defendant must have consciously accepted the benefit." *Id.* "Without enrichment, there can be no unjust enrichment . . . ." *Greeson v. Byrd*, 54 N.C. App. 681, 683 (1981).

---

[23] *Id.* ¶ 135.
[24] MERS Mot. Dismiss ¶ 11.

[34]    As an initial matter, the Complaint itself provides little, if any, information concerning what benefit Plaintiff alleges it conferred on Defendants.  It is unclear from the face of the Complaint in what manner, "avoiding filing fees for properly filed, accurate, and/or corrected mortgage documents" rises to the level of a benefit conferred on Defendants by Plaintiff.  The language of the Complaint suggests that Plaintiff's unjust enrichment Claim is actually a claim for lost filing fees.  As discussed above, after initially designating MERS as the mortgagee of record for the purpose of public filings, Defendants did not record subsequent assignments of the beneficial interests underlying numerous mortgages and deeds of trust.  As a result, Defendants avoided paying filing fees associated with those subsequent assignments.

[35]    Lost filing fees by Plaintiff cannot serve as the basis for a claim for unjust enrichment.  The allegation that Defendants did not pay filing fees for assignments that were not recorded with Plaintiff, without more, does not describe sufficiently any benefit conferred on Defendants by Plaintiff.  Absent an allegation of a specific benefit conferred on Defendants by Plaintiff, the Unjust Enrichment Claim must fail.

[36]    In its response the Motion, Plaintiff defends its unjust enrichment Claim by alleging that, "Defendants are attempting to obtain the benefit of North Carolina's real property recording laws and Guilford County's Registry of Deeds without incurring the costs associated therewith."[25]  Plaintiff goes on to state that, "it is the protection that a Registry filing confers that is the benefit alleged here."[26]

[37]    Likewise, the "protection" described by Plaintiff cannot serve as the basis for the Unjust Enrichment Claim.  This is so because North Carolina law does not

---

[25] Pl. Resp. to Def. Mot. Dismiss, 29.
[26] *Id.* 31.

require an assignment of a mortgage or deed of trust to be recorded in order to be effective and specifically provides that the assignee of such an interest is entitled to succeed to the rights of his assignor without regard for whether the assignment was recorded with the Register of Deeds.[27] G.S. 47-17.2 provides:

> It shall not be necessary in order to effect a valid assignment of a note and deed of trust, mortgage, or other agreement pledging real property or an interest in real property as security for an obligation, to record a written assignment in the office of the register of deeds in the county in which the real property is located. A transfer of the promissory note or other instrument secured by the deed of trust, mortgage, or other security interest that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust, mortgage, or other security instrument. The assignee of the note shall have the right to enforce all obligations contained in the promissory note or other agreement, and all the rights of the assignor in the deed of trust, mortgage, or other security instrument, including the right to substitute the trustee named in any deed of trust, and to exercise any power of sale contained in the instrument without restriction. The provisions of this section do not preclude the recordation of a written assignment of a deed of trust, mortgage, or other security instrument, with or without the promissory note or other instrument that it secures, provided that the assignment complies with applicable law.

[38]    G.S. 47-17.2 contemplates that once a mortgage interest is initially recorded with the Register of Deeds, it may be transferred and assigned many times over without each subsequent transfer or assignment also needing to be recorded. Further, G.S. 47-17.2 makes plain that an assignee of a beneficial interest in a mortgage or deed of trust in entitled to the "protection that a Registry filing confers"

---

[27] The Complaint contains no allegation that Defendants failed initially to file mortgages and deeds of trust with Plaintiff. Further there is no allegation that fees associated with those initial filings were not made. Therefore, Plaintiff's assertion appears to be that the benefit it provided Defendants was "protection" as to those mortgages and deeds of trust that were transferred within MERS.

regardless of whether additional filings are made or whether additional fees are paid to Plaintiff. Thus, whatever protection the assignee receives is commensurate with the legal efficacy of his predecessors' filings and the validity of the assignment itself.

[39]     G.S. 47-17.2 suggests that if a particular assignment is not legally effective then the assignment is not afforded protection under the statute. If, as Plaintiff contends, the assignments at issue were the product of robo-signing and therefore procured by fraud and forgery, then those assignments were not afforded any protection under G.S. 47-17.2. Thus, to the extent Plaintiff's contention is that the assignments themselves were invalid, there was no benefit provided to Defendants in the form of protection.

[40]     Conversely, if the assignments were legally effective then they were entitled to "the protection a Registry filing confers" by operation of law regardless of whether additional filings were made or additional fees were paid. To the extent the assignments themselves were valid, the protection they received cannot be said to be a benefit conferred by Plaintiff. Rather, the protection described by Plaintiff is a benefit conferred by the General Assembly and laws of North Carolina and cannot serve as the basis of Plaintiff's Unjust Enrichment Claim.[28] In either event, Defendants cannot be said to have been "unjustly" enriched by Plaintiff.

[41]     Accordingly, Defendants' Motion as to Plaintiff's Unjust Enrichment Claim should be GRANTED.

---

[28] Even assuming that the protection conferred by G.S. 47-17.2 might be conceptualized as a benefit indirectly bestowed by Plaintiff as the Register of Deeds, the Unjust Enrichment Claim must fail. This is so because unjust enrichment does not apply where the services at issue were rendered gratuitously or in discharge of some legal obligation. *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 96 (1966).

F.

### Motion for Appointment of Special Master and Injunctive Relief

[42]    As mentioned above, the Complaint includes a Motion for Appointment of Special Master and for Injunctive Relief ("Plaintiff's Motion").  Plaintiff requests the appointment of a special master to identify fraudulent or invalid documents filed by Defendants.  Plaintiff asks that the expense of the special master be charged to Defendants.  Plaintiff further seeks a declaration of this court as to the validity of any such documents identified by the special master.  Plaintiff seeks injunctive relief in the form of an order of this court requiring Defendants to (a) file documents to replace any documents declared to be fraudulent or invalid, (b) pay fees to Plaintiff for the filing of such replacement documents and (c) cease and desist the practice of robo-signing and otherwise refrain from filing falsified and/or forged documents with Plaintiff.

[43]    The nature of Plaintiff's Motion is unclear.  It is identified in the Complaint as a freestanding motion for injunctive relief.  Injunctive relief is a form of equitable relief. *Roberts v. Madison County Realtors Ass'n*, 344 N.C. 394, 399 (1996).  As a form of equitable relief, a permanent injunction is not an independent cause of action. *See Shugar v. Guill*, 304 N.C. 332, 335 (1981) (holding that a claim for punitive damages, as a claim for equitable relief, is not an independent cause of action, and therefore may only be awarded when a cause of action otherwise exists).  It appears that the injunctive relief sought by Plaintiff is, in operation, a part of the relief it seeks should it prevail on any of its substantive Claims.  This reading of the Motion is supported by the fact that the prayer for relief included in the Complaint describes the same relief requested in Plaintiff's Motion.

[44]    As a form of relief or remedy, Plaintiff's Motion must be DENIED in light of the court's conclusion that Plaintiff's underlying causes of action are fatally flawed.  That portion of Plaintiff's Motion seeking the appointment of a special master must also be DENIED as there is no basis for the appointment of a special master pursuant to Rule 53(a)(2) where there is no underlying cause of action.

[45]    At the hearing on the Motion, counsel for Plaintiff suggested that Plaintiff's Motion could survive the dismissal of all underlying Claims in so far as Plaintiff's Motion constitutes a separate claim for declaratory judgment under G.S. 1-253.  A review of the Complaint reveals no reference to G.S. 1-253.  The closest the Complaint comes to requesting a declaratory judgment is that portion of Plaintiff's Motion and prayer for relief that asks the court to make a declaration as to the validity of documents identified by the proposed special master.  The court determines that these passing references are insufficient to state a claim for relief under G.S. 1-253.

[46]    Even giving Plaintiff the benefit of a reading of the Complaint that states a Claim for a declaratory judgment, such Claim must fail as a matter of law for two reasons.  First, G.S. 1-254 provides that in order to have standing to seek a declaratory judgment, a party must be "a person interested" under the contract or other writing at issue.  *See Whittaker v. Furniture Factory Outlet Shops & Auto-Owners Ins. Co.*, 145 N.C. App. 169, 173 (2001).  This provision has been interpreted by the courts of this state to only "allow a party to a contract or a direct beneficiary to have standing under N.C. Gen. Stat. § 1-254 to file a declaratory judgment action under N.C. Gen. Stat. § 1-253." *Id.*

[47]    To the extent Plaintiff has stated a Claim for declaratory judgment as to the validity of certain mortgage documents filed in its offices, Plaintiff is not a person interested under those mortgage documents.  Plaintiff is not a party to those mortgage documents at issue nor may it be said to be a direct beneficiary of those documents.  Thus, Plaintiff lacks standing to bring such a Claim.

[48]    Case law further provides that the North Carolina Declaratory Judgment Act is not a vehicle for the voiding or nullification of written instruments.  *A. Perin Dev. Co. v. Ty-Par Realty, Inc.*, 193 N.C. App. 450, 451-52 (2008).  Plaintiff's Motion and the prayer for relief make plain that what Plaintiff ultimately seeks is a declaration that certain mortgage documents filed in its offices are invalid and void.  Plaintiff may not use the Declaratory Judgment Act for such purposes.

[49]    Accordingly, Plaintiff's Motion should be DENIED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[50]    The Motion to Dismiss filed on behalf of Defendant Green Tree Servicing, LLC is GRANTED.  As to said Defendant this civil action is DISMISSED.

[51]    The Motion to Dismiss filed on behalf of Defendant Capital One, N.A. is GRANTED.  As to said Defendant this civil action is DISMISSED.

[52]    The Motion to Dismiss filed on behalf of Defendants MERSCORP Holdings, Inc., Mortgage Electronic Registration Systems, Inc., Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., Bank of America, N.A., JPMorgan Chase Bank, N.A. for itself and as successor by merger for Chase Home Finance LLC, EMC Mortgage LLC formerly known as EMC Mortgage Corporation, Sand Canyon Corporation, Citi Residential Lending, Inc., Ameriquest Mortgage Company, USAA Federal Savings

Bank, MorEquity, Inc., U.S. Bank National Association, EquiCredit Corporation of America, NationsCredit Financial Services Corp., Argent Mortgage Company, LLC, First Franklin Financial Corp., Navy Federal Credit Union, Mortgage Access Corp. d/b/a Weichert Financial Services and MidFirst Bank is GRANTED.  As to each of said Defendants this civil action is DISMISSED.

[53]    The Motion to Dismiss filed on behalf of Defendant Lender Processing Services, Inc., DocX, LLC and LPS Default Solutions, Inc. is GRANTED.  As to each of said Defendants this civil action is DISMISSED.

[54]    The Motion to Dismissed filed on behalf of Defendant Homeward Residential, Inc. F/K/A American Home Mortgage Servicing, Inc. is GRANTED.  As to said Defendant this civil action is DISMISSED..

[55]    The Stipulated Motion to Dismiss of the Bank of New York Mellon and the Bank of New York Mellon Trust Company, N.A. is GRANTED.  As to each of said Defendants this civil action is DISMISSED.

[56]    Plaintiffs' Motion for Appointment of Special Master and for Injunctive Relief is DENIED.

[57]    This Opinion and Order resolves by dismissal all pending Claims stated in this civil action.  Accordingly, this civil action is DISMISSED.

[58]    Taxable costs are charged to Plaintiffs.

This the 29th day of May, 2013.